OPINION
{¶ 1} This original action is presently before this court for final determination of the merits of the mandamus claim of relators, Richard DiVincenzo, Angela Lewis, Rose Wilson, and Sharon Woodard. After submitting an agreed statement of the underlying facts in the action, the parties filed their respective briefs on the final merits of relator's claim for relief. Upon reviewing the statement of facts and the briefs, we conclude that respondent, Auditor David Griffing of the City of Warren, Ohio, is entitled to judgment in his favor on relators' claim because there exists an alternative legal remedy they could pursue to settle the basic dispute between the parties.
 {¶ 2} The following is a synopsis of the essential facts as set forth in the parties' agreed statement. During the majority of the 1990's, each relator in this action was an employee of the Income Tax Division of the City of Warren. As a municipal employee, each relator was a member of Local No. 74, American Federation of State, County, and Municipal Employees, AFL-CIO ("Local No. 74"). This union had the authority to act as the exclusive representative of relators for the express purpose of negotiating collective bargaining agreements with the City. As part of this authority, Local No. 74 could agree to terms governing all aspects of relators' employment, including their rates of pay and other forms of compensation.
 {¶ 3} In 1993, the City of Warren and Local No. 74 were able to reach an accord on a collective bargaining agreement which remained effective from January 1, 1994, until December 31, 1996. In addition to containing basic provisions governing relators' rate of pay, this collective bargaining agreement had a specific provision which allowed the City to change an employee's rate of pay if his/her job description was substantially altered or a new position was created. Specifically, Article 17 of the agreement stated that, once the City had decided to make the change, its representative had to meet with the Union Classification Committee for the purpose of discussing the matter. Once this meeting had occurred, the City had to render a written decision on the exact changes in job description, job classification, and rate of pay. If the union disagreed with the City's decision, it could follow the stated procedure for filing a grievance on the matter.
 {¶ 4} As of 1996, Patricia Leon-Games was the elected Treasurer for the City of Warren, and was the direct supervisor of relators in the City's Income Tax Division. On December 12, 1996, Leon-Games sent a letter to respondent in which she stated that she had recently had a meeting with Local No. 74's Union Classification Committee for the purpose of amending the rate of pay for certain employees in her office, including relators. She also stated that this meeting, which had been held pursuant to Article 17 of the collective bargaining agreement, had resulted in a separate agreement between herself and the Union Classification Committee as to the compensation relators and the other employees should receive in light of changes in their job descriptions. Under this separate agreement, relators would be given a specific raise for the remainder of 1996 and an additional nine percent raise in each of the subsequent three years. Finally, the letter indicated that if the new raises did not take effect immediately, she might consider taking legal action against respondent and the City.
 {¶ 5} At approximately the same time Leon-Games was reaching her separate agreement with the Union Classification Committee, the City of Warren had started to negotiate a new collective bargaining agreement with Local No. 74. The negotiations again covered the basic terms of employment for all city employees, including all four relators. After the negotiations had reached an impasse in January 1997, the City and the union submitted the entire matter to a "fact finder" pursuant to R.C. 4117.14. Once the fact finder had received proposals from both sides, he issued a report in which he made specific findings on the disputed issues. His findings were subsequently adopted by the City and Local No. 74 as the basis of the new collective bargaining agreement.
 {¶ 6} According to its own terms, the new "collective" agreement was intended to cover the identical basic period as the separate agreement negotiated by Treasurer Leon-Games, i.e., the three years from January 1, 1997, until December 31, 1999. The new "collective" agreement contained provisions which expressly delineated the rates of pay for the positions held by all four relators. However, the rates set forth in the new "collective" agreement were less than the new rates referenced by Leon-Games in her letter of December 12, 1996.
 {¶ 7} Before the new collective bargaining agreement could be finalized, Local No. 74 and six employees of the Income Tax Division, including all four relators in this case, brought a civil action against the City of Warren in the Trumbull County Court of Common Pleas. In the first claim of their complaint, the union and the six employees sought a declaratory judgment concerning the validity of the separate agreement as set forth in the Leon-Games letter. They alleged that the separate agreement was binding because it had been made under Article 17 of the first collective bargaining agreement. Under the second claim, the union and the employees sought a money judgment for the difference between the amount of pay the employees were presently receiving and the amount of pay they should be receiving under the separate "pay" agreement.
 {¶ 8} The foregoing civil case was assigned to a court magistrate for review. At the beginning of the initial proceedings before the magistrate, Local No. 74 and the six "Tax" employees voluntarily dismissed their second claim, choosing to proceed solely on the declaratory judgment claim. After accepting factual stipulations from the parties to that case, the court magistrate issued a written decision in which he recommended that the complaint be dismissed on the basis that the six employees had not filed any grievance prior to bringing the case. Upon overruling timely objections to this decision, the trial court adopted the magistrate's recommendation and dismissed the matter.
 {¶ 9} Local No. 74 and the six "Tax" employees, including all four relators in the instant case, appealed the foregoing judgment to this court. In June 2001, we reversed the decision to dismiss the declaratory judgment claim and remanded the matter to the trial court for further proceedings. As the basis for our holding, we concluded that the six employees had not been required under the prior collective bargaining agreement to file a grievance in regard to the validity of the "Leon-Games letter" agreement because there had been no dispute between the City and the union as to the actual existence of the separate agreement.
 {¶ 10} Upon remand, the underlying civil proceeding was again assigned to the court magistrate. Once the parties to that particular case had indicated that it would not be necessary to present any new evidence on the matter, the court magistrate issued a new written decision in which he concluded that Treasurer Leon-Games has sufficiently changed the job descriptions of the "Tax" employees to properly invoke Article 17 of the prior collective bargaining agreement. The magistrate also held that Leon-Games had had the authority to act in behalf of the City in negotiating the new rate of pay under the separate agreement. Based upon this, the magistrate recommended that the separate agreement, as delineated in the Leon-Games letter of December 12, 1996, be declared binding upon the City of Warren.
 {¶ 11} After no objections were filed regarding the magistrate's second decision, the trial court adopted the magistrate's recommendation and entered judgment in favor of the union and the "Tax" employees, including all four relators, on their declaratory judgment claim. Specifically, the trial court declared that the rates of pay set forth in the separate agreement were binding. No appeal was taken from this judgment.
 {¶ 12} Immediately following the issuance of the trial court's second judgment in November 2002, respondent took the necessary steps to pay the six "Tax" employees in accordance with the pay rates in the Leon-Games letter for the period of December 20, 1996, until December 31, 1996. However, in relation to the period from January 1, 1997, until December 31, 1999, respondent still refused to perform the required steps to pay the six employees the difference between the rates in the applicable collective bargaining agreement and the rates in the Leon-Games letter. As a result, four of the six employees, i.e., relators, filed the instant action in mandamus, seeking the issuance of an order requiring respondent to draw the supplemental warrants necessary for them to receive their additional pay under the Leon-Games letter. As the grounds for their sole claim, relators maintained that respondent, as the Auditor for the City of Warren, had a legal obligation under the trial court's second judgment to ensure that the additional pay is given to them.
 {¶ 13} In light of the foregoing undisputed facts, respondent now contends that a writ of mandamus cannot lie in this instance because relators are unable to satisfy each of the three elements for the writ. Specifically, as to the "adequate remedy" element of relators' claim, respondent submits that relators cannot fulfill this element because the undisputed facts indicate that there are two other remedies they could have pursued to achieve the same result as a writ. According to respondent, relators should have either pursued their original claim for a money judgment as part of the underlying case before the Trumbull County Court of Common Pleas, or filed a motion for contempt to enforce the second judgment rendered by the trial court.
 {¶ 14} In response to the foregoing argument, relators first assert that a contempt motion would not be proper under the instant situation because the trial court's second judgment in the underlying case only declared their rights under the Leon-Games letter; i.e., that judgment did not contain a specific order concerning the payment of additional funds to them. Second, they essentially argue that they could not have recovered the additional funds under their "money judgment" claim because it is inherently difficult to enforce a money judgment against a municipality. Based on this, relators maintain that a writ of mandamus is the only remedy under which they could achieve complete relief.
 {¶ 15} At the outset of our discussion, this court would note that relators have not requested us to make a further declaration concerning their rights under the separate agreement set forth in the Leon-Games letter; instead, their claim for the writ is based solely on the existence of the trial court's second judgment in the underlying action. To this extent, relators are attempting to employ the instant case as a means of enforcing the declaration of rights in the second judgment. As a general principle, the Supreme Court of Ohio has stated that an action in mandamus is not intended to be used in this particular fashion. See State exrel. Nationwide Mut. Ins. Co. v. Henson, 96 Ohio St.3d 33,2003-Ohio-2851; State ex rel. Shemo v. Mayfield Heights,93 Ohio St.3d 1, 2001-Ohio-1294. "The use of a mandamus to enforce a judgment is not popular and widespread because other avenues of enforcement are readily available." Hunt v. Westlake City SchoolDist. Bd. of Edn. (1996), 114 Ohio App.3d 563, 568.
 {¶ 16} As the Hart court noted in its analysis, the Supreme Court has recognized that there are certain unusual circumstances in which the foregoing basic principle will not be applied. For example, in State ex rel. Shimola v. Cleveland (1994),70 Ohio St.3d 110, the Supreme Court issued a writ to compel the satisfaction of a money judgment against a city because, pursuant to R.C. 2744.06, a municipality was immune from typical enforcement proceedings in a tort case. However, a review of the relevant precedent shows that the Supreme Court has only granted a writ to enforce a prior judgment when there is no alternative remedy to pursue or the alternative remedy is not considered adequate. See, e.g., Shemo, supra. Accordingly, this court views the general principle concerning the use of a mandamus action to enforce a prior judgment as a logical extension of the basic requirement that a writ will not lie when the relator has an adequate remedy in the ordinary course of the law.
 {¶ 17} In the instant case, respondent asserts that a contempt motion before the trial court in the declaratory judgment proceeding would constitute an adequate remedy for relators. While this court does not agree that a contempt motion would be a proper remedy in this instance, we would agree that there was an alternative remedy relators could have pursued as a substitute for this action. Specifically, we would indicate that R.C. Chapter 2721 has a specific provision governing the enforcement of a declaratory judgment. R.C. 2721.09 states:
 {¶ 18} "Whenever necessary or proper, further relief on a declaratory judgment or decree previously granted may be given. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application is sufficient, the court shall, on reasonable notice, require any adverse party, whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith."
 {¶ 19} In interpreting the foregoing statute, the courts of this state have held that the provision was intended to enable a trial court in a declaratory judgment action to fashion a separate remedy for the enforcement of the declared right. InParrott v. Spring Indus., Inc. (Apr. 24, 1991), 5th Dist. No. 90AP050039, 1991 Ohio App. LEXIS 2018, a lessor brought a declaratory judgment action to have a lease declared null and void. After the trial on the merits had concluded, the lessee filed a petition under R.C 2721.09 for an order which would allow it to remove certain property from the leasehold if the lease was declared void. Although the trial court denied the petition without any explanation, the Fifth Appellate District held that the merits of that petition should have been fully addressed because R.C. 2721.09 granted the trial court the authority to order additional relief in light of its declaration of rights. See, also, Cent. Motors Corp. v. Pepper Pike (1979),63 Ohio App.2d 34, in which the Eighth Appellate District concluded that, once a trial court had declared a zoning ordinance unconstitutional as to a parcel of land, it can use its authority under R.C. 2721.09 to stop the municipality from taking any action to stop the proposed use of the land
 {¶ 20} In light of the foregoing precedent, this court holds that, if the trial court did implicitly conclude that relators were entitled to receive back pay as a direct result of its declaration concerning the validity of the separate agreement in the Leon-Games letter, it would have the ability to order the City of Warren to make the necessary payments to them. Such an order would merely constitute the enforcement of the rights as declared in the trial court's second judgment. Furthermore, since respondent is the city official who is responsible for authorizing the payment of city funds, the order could be applied to him even though he was not a separate party to the underlying action.
 {¶ 21} As an aside, this court would further note that, as part of our opinion in the appeal from the trial court's first judgment, we expressly stated that the ultimate issue in the declaratory judgment case was whether respondent had to reimburse relators for the difference between the rate of pay under the separate Leon-Games agreement and the rate under the collective bargaining agreement covering the three years in dispute. At pp. 4-5 of our opinion in Local No. 74, Am. Fedn. of State, Cty., Municipal Employees v. Warren (Apr. 13, 2001), 11th Dist. No. 99-T-0175, we stated:
 {¶ 22} "Whether or not the agreement reached by the City and the [union] is characterized as a `pre-arbitration' settlement,' a `post-grievance meeting,' an `arbitration settlement,' or any other term, does not make a difference in the outcome. The parties to the CBA reached a final, binding agreement. There is no dispute between those parties and, thus, no need for a grievance to be filed. Hence, the matter was properly before the common pleas court to decide the issue presented by the [union].The issue was and is whether or not the City Auditor actedproperly in refusing to issue paychecks in accordance with theagreement." (Emphasis added.)
 {¶ 23} Obviously, the primary question raised by the declaratory judgment claim in the underlying case concerned the validity of the separate Leon-Games agreement. However, in light of the foregoing quote, it is readily apparent that this court had further concluded that, if the trial court found the separate agreement to be valid, it could then proceed under the proper circumstances to address the "payment" question and issue any order necessary to enforce its determination. That is, although our prior opinion did not refer to R.C. 2721.09, we still indicated that the trial court had the authority to address the enforcement issue.
 {¶ 24} As an aside, this court would further emphasize that our opinion contained the foregoing quote even though we had previously noted that Local No 74 and the six "Tax" employees had dismissed their "money judgment" claim in the underlying action. Again, although not expressly stated in our prior opinion, it is apparent that we did not envision that the dismissal of the "money judgment" claim would foreclose the trial court from considering whether respondent should be required to pay the six employees in accordance with the rates set forth in the separate Leon-Games agreement. In light of the fact that R.C. 2721.09
allows a trial court to render additional orders to enforce the declaration of rights, we remain convinced that the dismissal of the "money judgment" claim would not affect the trial court's authority to address the "payment" issue.
 {¶ 25} Given that a petition for additional relief under R.C.2721.09 constitutes an alternative remedy relators could have pursued in this matter, the issue then becomes whether such a petition can be deemed "adequate" to the extent that it provides speedy and complete relief. As to the quickness with which relief could be granted, we would note that a petition for additional relief before the trial court would be a continuation of an action in which the trial court and the court magistrate are already familiar with the basic facts of the case. Under such circumstances, the trial court should be able to rule upon the petition without taking any additional evidence. In contrast, the instant action constituted a new proceeding in which the parties had to submit substantial stipulations of fact before the matter could even go forward. Thus, of the two remedies, a petition under R.C. 2721.09 would clearly provide the speediest relief.
 {¶ 26} As to the quality of the relief obtainable under R.C.2721.09, relators argue that, unless a writ of mandamus is issued, they could experience considerable difficulty in attempting to collect the funds from the City because the Ohio Revised Code limits the sources from which the funds can be taken. Nevertheless, in making the foregoing argument, relators still admit that, pursuant to R.C. 131.21, the City of Warren must maintain a "judgment fund" to cover any liability incurred in a legal proceeding. While this court might agree that it could prove difficult for respondent and the City to allocate the necessary funds if they are subsequently ordered to do so, we fail to see how we would have a greater ability to compel compliance. The extent of our general authority in granting a writ of mandamus is indistinguishable from the scope of the trial court's authority under R.C. 2721.09.
 {¶ 27} Finally, this court would indicate that if there is a true dispute concerning whether relators are entitled to receive back pay for the three years pursuant to the trial court's second judgment in the underlying case, the trial court is in the best position to interpret its own judgment. Similarly, the trial court is in the best position to determine if respondent and the City have already waived certain defenses which have been raised in this action. Under these specific circumstances, a petition for additional relief under R.C. 2721.09 is the best procedural mechanism for settling this matter.
 {¶ 28} In light of the foregoing discussion, this court concludes that the stipulated facts before us demonstrates that there exists an adequate legal remedy through which relators could obtain the same basic relief they sought in this case. Accordingly, a writ of mandamus cannot be granted because relators are unable to meet each of the three elements for the writ.
 {¶ 29} It is the order of this court that the requested writ is denied, and judgment is hereby entered in favor of respondent as to relators' entire mandamus claim.
Christley, O'Neill and Rice, JJ., concur.