MEGA OUTDOOR, L.L.C. et al., Appellants,

v.

CITY OF DAYTON, Appellee.

[Cite as *Mega Outdoor, L.L.C. v. Dayton,* 173 Ohio App.3d 359, 2007-Ohio-5666.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21807.

Decided Oct. 19, 2007.

Gregory P. Garner and Richard L. Carr Jr., for appellants.

John J. Danish, Lynn R. Donaldson, and John C. Musto, for appellee.

———————

WOLFF, Presiding Judge.

{¶ 1} Mega Outdoor, L.L.C. ("Mega") and the owners of 504 East First Street, William Smith and Dale Magistrelli, appeal from a judgment of the Montgomery Court of Common Pleas, which granted summary judgment to the city of Dayton on the grounds that their claims were precluded by res judicata and sovereign immunity.

{¶ 2} The record, construed in favor of Mega, Smith, and Magistrelli, establishes the following underlying facts.

{¶ 3} Mega entered into a lease agreement with Smith, and Magistrelli, which granted Mega permission to erect a free-standing poster sign (commonly called a billboard) at 504 East First Street in Dayton, Ohio. On January 4, 2001, Mega filed an application with the city of Dayton to erect the sign. On April 17, 2001, the city approved the application, and Mega began construction by pouring footers and erecting the support column of the sign. On May 4, 2001, the city issued a stop-work order, claiming that part of the sign was located in the right-of-way of East First Street. Mega appealed the stop-work order to the Dayton Board of Zoning Appeals ("BZA").

{¶ 4} On May 16, 2001, Mega amended its original application; the amended application moved the sign further back onto the property and away from the right-of-way. On June 6, 2001, the city denied the amended application on the ground that the lot lines were not shown on the site plans of the amended application.

{¶ 5} On June 19, 2001, Mega revised its plans to show the lot lines. The city refused to accept the revised plans, stating that it appeared that they were seeking two signs for the property, which were not permitted under the zoning ordinance. After Mega made it clear that it was not attempting to obtain a permit for a second sign, the city permitted Mega to file the amended application.

{¶ 6} On June 27, 2001, the BZA affirmed the zoning administrator's decision to issue the stop-work order based on the facts that the proposed sign was being constructed in the public right-of-way and that Mega had failed to obtain the permission of the city of Dayton to erect the proposed sign in the right-of-way. Mega appealed the BZA's decision to the common pleas court. *Mega Outdoor, L.L.C. v. Dayton* (Sept. 26, 2003), Montgomery C.P. No. 01–CV–3646 ("*Mega I*").

{¶ 7} On July 10, 2001, the city denied the amended application, indicating that a roof-mounted sign was not permitted. On July 19, 2001, Mega made a minor revision to its application to clarify that the application was, and had always been, for a free-standing sign.

{¶ 8} On July 25, 2001, the city of Dayton rezoned the area including 504 East First Street to a different classification, which did not permit billboards. On August 2, 2001, the city rejected Mega's application on the ground that the sign was not allowed in the new zoning classification.

{¶ 9} On March 7, 2003—while Mega's appeal of the stop-work order was pending before the common pleas court—Mega, Smith, and Magistrelli filed a complaint for declaratory judgment in the court of common pleas, seeking a declaration as to the location of the right-of-way and an order directing the city to grant them a permit to construct the sign as requested in the application. *Mega Outdoor, L.L.C. v. Dayton,* Montgomery C.P. No. 03–CV–1667 (*"Mega II"*). The complaint noted that because of the rezoning, Mega would not be able to obtain a new permit for the sign. The action was subsequently dismissed for want of prosecution.

{¶ 10} On September 26, 2003, the trial court in *Mega I* affirmed the decision of the BZA, finding that the BZA's affirmance of the stop-work order was not arbitrary, capricious, or unreasonable. In reaching this decision, the trial court confined itself to the BZA transcript of proceedings. Mega appealed the trial court's judgment to this court. *Mega Outdoor, L.L.C. v. Dayton,* Montgomery App. No. 20192. On May 19, 2004, we dismissed the appeal because of Mega's failure to timely file an appellate brief.

{¶ 11} On February 18, 2005, Mega, Smith and Magistrelli filed the instant litigation, seeking (1) a declaration that they are entitled to a permit for a free-standing poster panel sign at 504 East First Street, (2) a declaration that the location of their sign "as applied for" is outside of the right-of-way, (3) a writ of mandamus requiring the city of Dayton to "issue proof that the property on which the sign is installed is zoned for billboard signs in support of [Mega's] new application for a sign permit," (4) compensatory damages, and (5) an injunction against the city of Dayton restraining it from enforcing the stop-work order.

{¶ 12} On November 15, 2005, the city moved for summary judgment on all claims. The city argued that Mega's claim that the billboard was not located in the right-of-way was barred by res judicata. It further argued that the city's subsequent grant of a permit for remodeling the existing building at 500 East First Street was not inconsistent with its prior determination that the billboard was being constructed unlawfully in the public right-of-way. The city also claimed that it was entitled to immunity for its actions taken in enforcing the zoning codes. In response, Mega, Smith, and Magistrelli argued that sovereign

immunity did not apply in this case, because the city had acted with malice, that the city violated their right to equal protection and engaged in an unconstitutional taking by denying their right to construct the billboard while allowing renovations to the property, and that res judicata did not apply.

{¶ 13} On August 22, 2006, the trial court granted the motion for summary judgment, finding that the issue of encroachment in the public right-of-way had previously been decided and that the issue was precluded by res judicata. The court further concluded that the city was entitled to sovereign immunity because it had engaged in a governmental function and there were no exceptions to immunity under R.C. 2744.02(B).

{¶ 14} This appeal followed. Mega, Smith, and Magistrelli (collectively, "Mega") raise five assignments of error, which we will address in an order that facilitates our analysis. Although Mega has set forth specific assignments of error, it has organized its arguments into three categories: res judicata, sovereign immunity, and equal protection. We will address the assignments of error with these categories in mind.

{¶ 15} V. "The trial court erred as a matter of law in finding that appellants' May 16, 2001 sign application was a 'new' application as opposed to an amendment to the original sign application, in that such factual finding fails to construe the evidence most strongly in appellants' favor."

{¶ 16} Mega argues in its fifth assignment of error that the trial court erred in finding that the May 16, 2001 application was a "new" application as opposed to an amendment to the original sign application. In a footnote, the trial court noted, "Plaintiffs contend that the subsequent applications were not 'new' but, rather, were amendments to the original application." Mega asserts that the trial court failed to construe the evidence in its favor in making that finding. The city responds that "[t]his is an innocuous point that does not change the outcome of this case."

{¶ 17} Although Mega's evidence consistently refers to the various sign applications as amended applications, we fail to see the significance of the May 16th application being an amended application rather than a new application. All of the sign applications that Mega submitted after the issuance of the stop-work order—whether new or otherwise—were submitted prior to the July 25, 2001 change in the zoning ordinance. Accordingly, we fail to see how the applications' status as amended applications as opposed to new applications affects the outcome of this litigation. More important, this finding had no bearing on the trial court's determination of the merits of the summary judgment motion. Any error by the trial court in referring to the May 16 application as a new application rather than an amended application is harmless.

{¶ 18} The fifth assignment of error is overruled.

{¶ 19} I. "The trial court erred as a matter of law in granting summary judgment in favor of the defendant on the basis of *res judicata* as there exist genuine issues of material fact on whether the previous appeal of the BZA decision to the common pleas court constitutes a final judgment, rendered on the merits, by a court of competent jurisdiction, conclusive of all rights, questions and facts in issue, as to the issue of encroachment in the public right-of-way.

{¶ 20} III. "the trial court erred as a matter of law in granting summary judgment in favor of the defendant on appellants' third claim for relief—mandamus on the basis of res judicata by failing to find that a genuine issue of material fact was raised regarding the issue of whether the city should have approved the May 16, 2001 sign application and whether the May 16, 2001 sign applications relates back to the date the original application was filed when that issue was not decided in the appeal of the BZA decision to the common pleas court."

{¶ 21} In its first and third assignments of error, Mega claims that the trial court erred in applying the doctrine of res judicata to its claims.

{¶ 22} "*Res judicata* is a doctrine of judicial preclusion. It states that '[a] valid, final judgment rendered upon the merits *bars* all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.' *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, paragraph one of the syllabus (emphasis added), 1995-Ohio-331. The prior judgment must be an order or decree entered on the merits by a court of competent jurisdiction. *Norwood v. McDonald* (1943), 142 Ohio St. 299 [27 O.O. 240], 52 N.E.2d 67. However, *res judicata* also 'applies to administrative proceedings that are "of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding." ' *Grava, supra,* at 381, 653 N.E.2d 226, (quoting *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St.3d 260 [31 OBR 463], 510 N.E.2d 373, paragraph one of the syllabus)." *Lamar Outdoor Advertising v. Dayton Bd. of Zoning Appeals,* Montgomery App. No. 18902, 2002-Ohio-3159, 2002 WL 1349600.

{¶ 23} In finding that res judicata applied to the issue of encroachment on the public right-of-way, the trial court stated:

{¶ 24} "In Case No. 2001 CV 3646, the Court upheld the BZA Board's Decision. That Decision specifically noted that the stop work order was issued because the sign was being erected in a public right-of-way without permission of the City. 2001 CV 3646 Decision at 2. It also specifically noted that 'Appellants argued that the survey on which the City Engineer based his decision that the sign encroached the right-of-way used the wrong methodology.' *Id.* Finally, it

noted that both parties had the opportunity to litigate the issue of whether the sign encroached on the public right-of-way, both used recognized survey methods and that BZA upheld the surveyor's determination regarding the encroachment. The Court found that BZA's Decision was not 'arbitrary, capricious, unreasonable, or unsupportable' and upheld the same. *Id.* at 4–5.

{¶ 25} "Based on the foregoing, the Court FINDS that on the issue of encroachment in the public right-of-way, there exists a final judgment, rendered on the merits, by a court of competent jurisdiction, conclusive of all rights and questions and facts in issue, as to the parties. *Grava*, 73 Ohio St.3d at 382, 653 N.E.2d 226. Therefore, Defendant is entitled to judgment, as a matter of law, on Count One and Count Two of Plaintiff's Complaint."

{¶ 26} Mega argues that the stop-work order was an ex parte administrative decision and that the subsequent appeals to the BZA and to the common pleas court were not adjudicative of all the issues raised in this lawsuit. Mega argues that the BZA appeal was a "single issue appeal" that did not "purport to decide where the right-of-way is located, instead merely finding that there wasn't sufficient evidence to overturn the Zoning Administrator's determination that the Sign Pole was in the right-of-way." Mega also notes that the BZA hearing did not address the subsequent change in the zoning ordinance, which made outdoor poster boards illegal.

{¶ 27} In support of its assertion that res judicata does not apply, Mega compares its situation to that in *Lamar*, 2002-Ohio-3159, 2002 WL 1349600. In *Lamar*, we determined that a billboard owner's failure to appeal a notice of the zoning inspector did not give the zoning inspector's ex parte administrative determination preclusive effect. We stated that the notice of violation was not issued in a judicial proceeding or even a quasi-judicial administrative proceeding.

{¶ 28} Upon review of the record, we agree with the trial court that the BZA's determination and the subsequent upholding of that determination by the court of common pleas operated as a judicial proceeding on the merits of whether the billboard encroached on the city's right-of-way. The record indicates that both parties presented evidence to the BZA and had ample opportunity to litigate whether the proposed sign was located on the right-of-way. Mega appealed the BZA's determination to the common pleas court, which appropriately reviewed the issue based upon the record developed before the BZA. This situation bears no resemblance to that in *Lamar*, in which no appeal to an administrative agency was taken.

{¶ 29} The location of the public right-of-way and, thus, the appropriateness of the stop-work order were the issues before the BZA, and the BZA's determination that the city's surveyor established the location of the right-of-way resolved those issues. Mega may not relitigate the city's determination of the location of

the right-of-way or whether the original proposed sign was within the right-of-way in this action. In sum, the trial court properly granted summary judgment to the city on Mega's second cause of action, which requested a declaration as to the location of the right-of-way, based on res judicata.

{¶ 30} Mega asserts that certain claims were not included in the appeal to the BZA and should not be subject to res judicata. Specifically, it states that its "claims of collusion by the Appellee in an effort to deprive the Appellants of their property rights, the refusal of the Appellee to issue an approval of the amended application * * * based upon the new zoning regulations which were not yet in affect [sic] and the fact that the right-of-way itself still has not been adjudicated by a court of competent jurisdiction provide sufficient issues of material fact so as to preclude summary judgment."

{¶ 31} We agree with Mega that its constitutional claims and the city's actions with regard to the amended applications were not before the BZA and that res judicata does not bar these claims. The trial court, however, did not apply res judicata to all of Mega's claims but, rather, determined simply that the prior proceedings barred the encroachment issue. It applied res judicata only to Counts One and Two of the complaint.

{¶ 32} As stated above, the trial court correctly applied res judicata to Count Two. We turn, therefore, to whether the trial court properly determined that res judicata applied to Count One.

{¶ 33} Mega's complaint is not a model of clarity. The first cause of action simply requests that the trial court "order the City of Dayton to grant them a permit as requested in their application for said free standing Sign." The verified complaint refers to multiple sign applications, the last of which was submitted on July 19, 2001, the applications dated May 16, 2001, and later place the sign in a different location from the sign that had been authorized until the May 4, 2001 stop-work order. Despite the various dates of the sign applications and the fact that two different sign locations are involved, Mega's prayer for relief requests that the court order the city to grant a permit for the "Sign as applied for." It is unclear whether "as applied for" refers to the sign that was the subject of the stop-work order or to the proposed relocated sign referred to in subsequent applications.

{¶ 34} Two of Mega's claims—Counts Two and Five—strongly suggest that the thrust of Mega's complaint is to seek enforcement of the permit granted on April 17, which was the subject of the stop-work order. In Count Two, Mega alleges:

{¶ 35} "34. The City of Dayton claims that the Right of Way on East First Street runs through the front of the Owner's building and through the location of the Sign pole installed by Plaintiffs on the property.

{¶ 36} "35. Plaintiffs claim that the Right of Way on East First Street runs along outside the front of the building on [the] property and that the Sign pole is constructed well outside of the true Right of Way.

{¶ 37} "36. The subsequent granting of a work permit for the remodeling of the building located at 504 East First Street constitutes an admission by the City of Dayton that the wall fronting on East First Street and, therefore, the pole for the Sign located behind said wall, are not located in the right of way.

{¶ 38} "37. Plaintiffs are entitled to a declaration as to the true and correct location of the Right of Way along East First Street as it affects the property, the Sign pole, the building and the adjacent properties on East First Street."

{¶ 39} In its prayer for relief, Mega requested a declaration that "the location of their Sign as applied for is outside of the right of way of East First Street."

{¶ 40} Count Two thus suggests that Mega was requesting a declaration that the sign *being constructed*, i.e., the original sign, was not in the public right-of-way.

{¶ 41} Moreover, Count Five, which requests injunctive relief, seeks an injunction restraining the city from enforcing the stop-work order and allowing Mega to complete construction of the sign on the property. Again, this claim, on its face, addresses the sign as approved on April 17, i.e., the subject of the stop-work order. Consequently, Count Five is also subject to res judicata.

{¶ 42} Despite the suggestion in Counts Two and Five that the complaint focuses on the original sign application, Count One can reasonably be construed as seeking a permit to construct a sign as requested in its final application, which the city failed to approve based on the change to the zoning ordinances. Mega seems to assert that this claim is part of its mandamus claim (Count Three), which states that the temporary sign permit that it had received has expired and that it cannot obtain a new permit due to the rezoning. Count Three seeks a writ of mandamus requiring the city to "issue proof that the property on which the Sign is installed is zoned for billboard Signs in support of Plaintiff's new application for a Sign permit." To interpret Count Three as Mega suggests requires some creative reading. Mega's mandamus claim could have simply requested an order that the city issue a permit based on its final amended application on the ground that the amended zoning ordinances did not apply to its sign applications.

{¶ 43} Nevertheless, because Count One—and Count Three, Mega argues—appears to encompass the claim that Mega was entitled to a permit based on the last submitted sign application, Mega has presented a claim that was outside the scope of *Mega I*. Accordingly, res judicata did not apply to that portion of Count One.

{¶ 44} However, to the extent that Count One seeks a permit to complete construction of the sign for which the permit had been granted on April 17, the trial court properly concluded that the claim was barred by res judicata. *Mega I* upheld the determination that the sign as approved on April 17 was unlawfully located in the public right-of-way and that the stop-work order was properly issued.

{¶ 45} The first assignment of error is overruled.

{¶ 46} The third assignment of error is sustained in part and overruled in part.

{¶ 47} II. "The trial court erred as a matter of law in granting summary judgment in favor of the defendant on the basis of res judicata as there exist genuine issues of material fact on whether the actions of appellee were governmental functions or proprietary functions, and whether the exceptions to sovereign immunity as set forth in O.R.C Section 2744.02(B) apply."

{¶ 48} In its second assignment of error, Mega claims that the trial court erred in concluding that the city of Dayton was entitled to sovereign immunity.

{¶ 49} The Political Subdivision Tort Liability Act requires a three-tiered analysis to determine whether a political subdivision should be immune from liability. Pursuant to R.C. 2744.02(A)(1), the general rule is that political subdivisions are not liable in damages when performing either a governmental or a proprietary function. *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543. Once immunity is established, the second tier of the analysis is whether one of the exceptions to immunity set forth at R.C. 2744.02(B)(1)-(5) applies. Third, immunity can be reinstated if the political subdivision can successfully show that one of the defenses contained in R.C. 2744.03 applies.

{¶ 50} Mega argues on appeal that the city of Dayton is not immune from liability under R.C. 2744.02(B)(2), which renders a political subdivision liable "for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." No other exception to immunity is implicated in this case. See R.C. 2744.02(B)(1), (3), (4), and (5).

{¶ 51} Mega claims that the city of Dayton was engaged in a proprietary function with regard to its application, because it operates the stadium used by the Dayton Dragons baseball team, and the stadium has advertising signage. Mega has provided no evidence that the city, in fact, operates the Dragons' stadium. Although there is no evidence on this issue, the city denies that it operates the stadium, and it states that the stadium is operated by Mandalay Group, which owns the baseball team. In short, Mega has failed to create a

genuine issue of material fact as to whether the city was engaged in a proprietary function.

{¶ 52} More fundamentally, it is clear from the record that the city's actions in the case involved enforcement of its zoning laws. "Governmental function" includes "[t]he provision or nonprovision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits or stop work orders in connection with buildings or structures." R.C. 2744.01(C)(2)(p).

{¶ 53} Based on the record, the trial court correctly found no genuine issue of material fact that the city of Dayton was engaged in a governmental function when it issued the stop-work order and denied Mega's subsequent applications to construct a sign at 504 East First Street. The trial court thus properly granted summary judgment to the city on Count Four of Mega's complaint, which sought compensatory damages.

{¶ 54} In its judgment entry, the trial court stated that the city was "entitled to judgment, as a matter of law, on *all Counts* of Plaintiff's Complaint because the Defendant City is entitled to immunity." (Emphasis added). Sovereign immunity applies to money damages, not to claims for equitable relief, such as injunctive relief. *State ex rel. Johnny Appleseed Metro. Park Dist. v. Delphos* (2001), 141 Ohio App.3d 255, 750 N.E.2d 1158. Accordingly, the trial court erred in granting summary judgment on Counts One (declaratory judgment), Two (declaratory judgment), Three (mandamus) and Five (injunctive relief) based on sovereign immunity.

{¶ 55} IV. "The trial court erred as a matter of law by failing to find that genuine issues of material fact were raised regarding the actions of the appellee in granting a building permit without issuing a zoning variance for construction on the premises in the claimed right of way for a subsequent restaurant user was an unconstitutional unequal treatment of appellants under the law."

{¶ 56} In its fourth assignment of error, Mega asserts that the trial court erred in granting summary judgment to the city of Dayton on its equal protection claim. Mega states that the city allowed Brixx Ice Company to tear down a portion of the previously existing building at 500 East First Street and then to construct a patio and wrought iron fence in the public right-of-way. Mega thus argues that the city treated Mega unequally from Brixx by allowing Brixx to build in the right-of-way but denying Mega the right to do so. Mega also claims

that the city thereby engaged in an unconstitutional taking of Mega's property rights.

{¶ 57} The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." " 'Under traditional equal protection analysis, class distinctions in legislation are permissible if they bear some rational relationship to a legitimate government objective. Departures from traditional equal protection principles are permitted only when burdens upon suspect classifications or abridgments of fundamental rights are involved.' *State ex rel. Vana v. Maple Hts. City Council* (1990), 54 Ohio St.3d 91, 92, 561 N.E.2d 909, 911, citing *Clements v. Fashing* (1982), 457 U.S. 957, 963, 102 S.Ct. 2836, 2843–2844 [73 L.Ed.2d 508]. Under rational basis scrutiny, legislative distinctions are invalid only if they bear no relation to the state's goals, and no ground can be conceived to justify them. *Fabrey v. McDonald Village Police Department* (1994), 70 Ohio St.3d 351, 353, 639 N.E.2d 31, 33." *State v. Harding*, Montgomery App. No. 20801, 2006-Ohio-481, 2006 WL 267323, ¶ 71.

{¶ 58} Facially neutral legislation may be subject to equal protection attack where the statute or ordinance has been implemented in a discriminatory fashion. When challenging the application of a facially neutral statute or ordinance, the plaintiff must establish (1) that the application had a discriminatory effect, i.e., that similarly situated persons or entities were treated differently, and (2) that the unequal application was motivated by a discriminatory purpose. *Farm Labor Organizing Commt. v. Ohio State Hwy. Patrol* (C.A.6 2002), 308 F.3d 523, 533–534; *Strickland v. Alderman* (C.A.11 1996), 74 F.3d 260, 264; *Washington v. Davis* (1976), 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597(a facially neutral statute which had a differential racial effect does not violate the equal protection clause absent a discriminatory purpose). Mega has not cited any evidence in the record to support that it was similarly situated to Brixx yet was treated differently. Nevertheless, we note that the affidavit of Ron R. Kronenberger, president and COO of Mega, states that "[s]ubsequent to the refusal of the Sign Application and its subsequent revisions, work on the Premises was performed for the Brixx Ice Company restaurant and bar including remodeling of the wall fronting on E. First Street and construction of a patio and wrought iron fencing immediately adjacent to the Sign pole and in the public right-of-way where no building structure previously stood." Steven M. Carne, zoning administrator for the city of Dayton, also stated in his deposition that the front of the Brixx structure is in the right-of-way.

{¶ 59} In response to Mega's argument, the city provided the affidavit of Keith G. Steeber, chief engineer of the Design Bureau of the Division of Civil Engineering for the city of Dayton. Steeber stated that the Design Bureau is charged

with protecting the public right-of-way from encroachment. According to his affidavit, in March 2003, Steeber reviewed the proposed renovations for the building located at 500 East First Street, also known as Brixx Ice Company. He reviewed the plans submitted by architect Mary Rogero. The plans included a parking lot and proposed outdoor patio. The patio was shown to be entirely on private property and not in the public right-of-way. Steeber indicated that a driveway was not considered an obstruction of the public right-of-way, and thus, no variance was required for the driveway; however, a separate permit was required. Based on the plans, the renovations were approved with conditions. The approval letter indicated that the letter "does not address the location of the billboard sign post and its relation to the right-of-way."

{¶ 60} Steeber further stated in his affidavit that one month later, he discovered that a portion of the patio was not installed in accordance with the plans and appeared to be in the right-of-way. Steeber contacted Rogero and informed her of his discovery. Steeber told Rogero that the patio either had to be removed or she needed to obtain a special privilege permit from the Dayton City Commission, which was required in order to build a structure in the public right-of-way. On May 28, 2003, the owner of Brixx Ice Company applied for a special privilege permit to build in the right-of-way, which was granted by the city commission on September 17, 2003.

{¶ 61} Steeber stated that Mega has never filed an application for a special privilege permit to build the sign in the public right-of-way.

{¶ 62} We find no evidence of an equal protection violation by the city of Dayton. The evidence demonstrates that the city has consistently sought to prevent construction in the public right-of-way along East First Street. As with Mega's sign, Brixx was also informed that it could not have its patio in the public right-of-way without permission from the city. However, unlike with the sign, the owners of Brixx requested and obtained a special privilege permit, which allowed them to build in the right-of-way. Mega did not seek a special privilege permit. Accordingly, the evidence does not demonstrate that similarly situated entities were treated differently by the city.

{¶ 63} The fourth assignment of error is overruled.

{¶ 64} The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion. As a result of our disposition of the assignments of error, the sole remaining issue is whether Mega was entitled to a permit based on its final sign application, which was denied by the city of Dayton based on the July 25, 2001 changes to the

zoning code. Mega's claims for declaratory judgment and mandamus on that issue remain.

Judgment affirmed in part<br>
and reversed in part,<br>
and cause remanded.

GRADY and GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth District Court of Appeals, sitting by assignment.