BLUST et al., Appellants,

v.

CITY OF BLUE ASH, Appellee.

[Cite as *Blust v. Blue Ash,* 177 Ohio App.3d 146, 2008-Ohio-3165.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070684.

Decided June 27, 2008.

148

---

Jacobs, Kleinman, Seibel & McNally, and John W. McNally; and Wood & Lamping, L.L.P., and Kevin K. Frank, for appellants.

Dinsmore & Shohl, L.L.P., Mark A. Vander Laan, and Bryan E. Pacheco, for appellee.

HILDEBRANDT, Presiding Judge.

{¶ 1} Plaintiffs-appellants, John Blust and Ruby Blust, appeal the summary judgment entered by the Hamilton County Court of Common Pleas in favor of defendant-appellee, city of Blue Ash, Ohio, in a declaratory-judgment action.

### The Blusts' Property and the Surrounding Uses

{¶ 2} The Blusts own a single-family residence on approximately one acre of land. The property is situated on a heavily traveled portion of Kenwood Road in Blue Ash. The home was built in 1920 and has been used as a private residence since the 1940s. Under the city's zoning ordinances, the property is located in an R–2 district, which allows only residential uses.

{¶ 3} In recent years, the Blusts have leased the property to Ruby Blust's son for $650 per month. Before that, they had leased the house to a tenant for $1,000 per month. According to the appraisals of the Hamilton County Auditor, the property has continued to appreciate in value.

{¶ 4} Numerous commercial properties have been built in the vicinity of the Blusts' house. A Jiffy Lube oil-change business is next door to the house, an office building is across the street, and a large office park is located behind the residence. Other businesses have proliferated along Kenwood Road. But immediately to the south of the Blusts' home, the area remains strictly residential.

{¶ 5} In 2003, the Blusts entered into a contract to sell the home to a dental-practice group, which planned to raze the house and construct a small office building on the site. The agreement was contingent upon a change in the property's zoning classification to permit the operation of a dental office.

{¶ 6} The developer of the office project filed an application for a zoning change from residential to commercial, and the city denied that application. The contract with the dental practice therefore was not consummated. In 2004, the Blusts themselves applied for a zoning change for a similar development. The city again denied the application.

{¶ 7} The Blusts then filed a declaratory-judgment action challenging the denial of the second application. The Blusts claimed that the denial of the zoning change was unconstitutional, that it constituted a taking of their property, and that it violated their rights to due process and equal protection of the law. The city filed a motion for summary judgment, which the trial court granted.

{¶ 8} In a single assignment of error, the Blusts now argue that the trial court erred in entering summary judgment in favor of the city.

{¶ 9} Under Civ.R. 56(C), a motion for summary judgment may be granted only when no genuine issue of material fact remains to be litigated, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence

construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[1] This court reviews the granting of summary judgment de novo.[2]

{¶ 10} The facts in this case concerning the character of the Blusts' property and the nature of the surrounding uses were uncontroverted. There remained only legal issues concerning the propriety of the zoning classification in light of those facts.

### The Zoning Ordinance Was Constitutional

{¶ 11} The Blusts first argue that the denial of the zoning-change application was unconstitutionally arbitrary and unreasonable. The city maintains that the denial was necessary to preserve the residential character of the area.

{¶ 12} We begin with the well-settled proposition that municipal legislation is entitled to a strong presumption of constitutionality.[3] To prevail on a claim that a zoning provision is invalid, a plaintiff must demonstrate that the ordinance is unconstitutional "beyond fair debate."[4]

{¶ 13} A zoning ordinance is unconstitutional if is arbitrary and unreasonable and bears no substantial relationship to the health, safety, and welfare of the municipality.[5] Alternatively, it is unconstitutional if it denies the economically viable use of land without substantially advancing a legitimate government interest.[6]

{¶ 14} In this case, the Blusts did not demonstrate that the zoning classification was arbitrary or that it failed to advance the health, safety, and welfare of the city. The Blusts argue that the proliferation of business uses in the area, with the traffic, noise, and other conditions arising from commercial uses, rendered the residential classification obsolete.

{¶ 15} This argument is not persuasive. While the record does demonstrate that the area surrounding the Blusts' property had changed throughout the

1. See *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189.

2. *Jorg v. Cincinnati Black United Front,* 153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781, at ¶ 6.

3. *Cent. Motors Corp. v. Pepper Pike* (1995), 73 Ohio St.3d 581, 583–584, 653 N.E.2d 639.

4. Id. at 584, 653 N.E.2d 639.

5. See *State ex rel. Ridge Club v. Amberley Village,* 1st Dist. No. C–070012, 2007-Ohio-6089, 2007 WL 3406918, at ¶ 11, jurisdictional motion overruled, 117 Ohio St.3d 1460, 2008-Ohio-1635, 884 N.E.2d 68.

6. Id.

years, the uncontroverted evidence was that the area immediately to the south of the home had retained its residential character. It was certainly within the city's purview to establish a boundary beyond which business uses would no longer be permitted. The fact that the Blusts' property represented the point of demarcation was not constitutionally significant. As the trial court properly held, the mere existence of other uses adjacent to residential property does not necessarily destroy the residential character of the entire area.[7]

{¶ 16} The Blusts cite a number of cases in which zoning restrictions were overturned because there were virtually *no* residential uses in the immediate vicinity.[8] By contrast, the parcel in this case was within a defined area of residential properties, and the city's legislative authority could have reasonably determined that it was in the city's best interest to preserve that area's residential character. In light of the deference to be accorded such determinations, the fact that the city could have drawn the line elsewhere did not render the designation improper.

{¶ 17} We also find no merit in the contention that the zoning designation denied the Blusts the economically viable use of the land without advancing a legitimate governmental interest.

{¶ 18} A zoning ordinance is not invalid merely because it deprives the owner of the most economically advantageous use of the property; rather, the inquiry is whether the zoning classification denies the owner all practical use of the land.[9] As this court has recently reiterated, the ability to begin new construction is not one of the fundamental "sticks" in an owner's bundle of property rights.[10] And the continued ability to use property for residential purposes generally precludes the finding of a taking, even though the property owner is not permitted to develop the property for more valuable commercial uses.[11]

{¶ 19} Here, the evidence established that the residential use of the property remained viable. Although the Blusts maintain that no one would want to reside

---

7. See *Leslie v. Toledo* (1981), 66 Ohio St.2d 488, 490, 20 O.O.3d 406, 423 N.E.2d 123.

8. See, e.g., *Federico v. Lyndhurst* (May 27, 1982), 8th Dist. No. 44035, 1982 WL 5382 (residential designation overturned where "[f]or several miles in either direction of the parcels, eighty to ninety percent of the lots * * * [were] zoned and used for retail purposes").

9. See *Smythe v. Butler Twp.* (1993), 85 Ohio App.3d 616, 621, 620 N.E.2d 901.

10. *State ex rel. Gilbert v. Cincinnati,* 174 Ohio App.3d 89, 2007-Ohio-6332, 880 N.E.2d 971, at ¶ 21.

11. Id. at ¶ 23.

in a home in such proximity to business uses, they had successfully rented the residence for years prior to their application for a zoning change, and the value of the property had continued to increase. Thus, the record does not support the argument that a residential use was not economically viable. And as we have already held, the classification of the property advanced the city's legitimate interest in maintaining the residential character of the area. Accordingly, the Blusts failed to demonstrate beyond fair debate that the zoning ordinance was unconstitutional.

### The City Did Not Violate the Blusts' Due-Process Rights

{¶ 20} The Blusts next argue that they were deprived of their right to procedural due process by the city's decision-making process in ruling on the application for a zoning change.

{¶ 21} Procedural due process is a flexible concept that requires such procedural protections as the situation demands.[12] The fundamental requirement is the opportunity to be heard at a meaningful time and in a meaningful manner.[13]

{¶ 22} In the case at bar, the Blusts were represented by counsel and were given a full and fair opportunity to present their case. The sole basis for their claim that the proceedings were unfair were hearsay statements by city officials that the city had already earmarked the property for a public-transportation terminal. Those alleged comments, standing alone, were not sufficient to demonstrate that the city had failed to fairly consider the Blusts' application or that it had deprived the Blusts of a meaningful opportunity to be heard.

{¶ 23} The Blusts also argue that the city deprived them of their right to substantive due process in denying their application for a zoning change. "Substantive due process" in general pertains only to liberty interests secured by the United States Constitution.[14] Because property is an individual right secured by state law,[15] property rights are protected only by procedural due process.[16] Therefore, we reject the substantive-due-process claim.

---

12. *Mathews v. Eldridge* (1976), 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18; *Mariemont Apartment Assn. v. Mariemont,* 1st Dist. No. C–050986, 2007-Ohio-173, 2007 WL 120727, at ¶ 39.

13. *Mariemont Apartment Assn.,* supra, at ¶ 39.

14. *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 35, 550 N.E.2d 456.

15. *Asher Invests., Inc. v. Cincinnati* (1997), 122 Ohio App.3d 126, 136, 701 N.E.2d 400.

16. *1946 St. Clair Corp.,* supra, 49 Ohio St.3d at 34–35, 550 N.E.2d 456. See also *Foster v. Wickliffe,* 175 Ohio App.3d 526, 2007-Ohio-7132, 888 N.E.2d 422, at ¶ 86, jurisdictional motion overruled, 118 Ohio St.3d 1411, 2008-Ohio-2340, 886 N.E.2d 873.

### The Blusts Were Not Denied Equal Protection

{¶ 24} Next, the Blusts argue that they were denied the equal protection of the law because similarly situated properties had been zoned for business uses.

 {¶ 25} Zoning regulations are subject to rational-basis scrutiny, meaning that they are invalid only if they make distinctions that bear no reasonable relationship to the government's interests and no ground can be conceived to justify them.[17]

 {¶ 26} As we have already concluded, the R–2 designation was rationally related to the city's legitimate interest in preserving the residential character of the neighborhood. The city had a legitimate interest in drawing a line past which business uses would not be permitted, and it did not act unreasonably in drawing that line at the Blusts' property. Accordingly, the Blusts' argument is without merit.

### The City Did Not Violate Section 1983, Title 42, U.S.Code

{¶ 27} Finally, the Blusts argue that the trial court erred in granting summary judgment in favor of the city on their claim under Section 1983, Title 42, U.S.Code. But because that claim was based on the alleged civil-rights violations that we have already held meritless, we also find no error in the court's rejection of the Section 1983 claim.

### Conclusion

{¶ 28} We overrule the assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

DINKELACKER, J., concurs.

PAINTER, J., dissents.

PAINTER, J., dissenting.

{¶ 29} The house is next to a Jiffy Lube.

### The Property

{¶ 30} On only one side of the Blusts' property is a small single-family house—built by my father in 1950—where our family lived until 1960. Much has changed. The "neighborhood" is no longer residential. To designate it so—and

---

17. *Mega Outdoor, L.L.C. v. Dayton,* 173 Ohio App.3d 359, 2007-Ohio-5666, 878 N.E.2d 683, at ¶ 57.

to prevent the property from being used as a small office building (still dwarfed by those around it)—is arbitrary and unreasonable.

{¶ 31} Although the majority opinion describes the area, it falls far short of giving a picture of just how commercial this area has become.

{¶ 32} On the north side of the property, next to the Jiffy Lube, is a restaurant and bar. On the other side of the busy intersection is a gas station, a dentist's office, a real estate office, and another restaurant.

{¶ 33} Directly across the street from the Blust property is a 116,000–square–foot office building with a large parking lot. Eight or nine single-family houses were razed for that development.

{¶ 34} Behind the Blusts is a railroad track. Just behind the track is a six-story office park with a large parking lot and lighting that "light[s] up the world."

{¶ 35} The majority opinion correctly notes that the area immediately south of the Blust property (along Kenwood Road) is "strictly residential." But it does not mention that only five or six houses exist between the Blust property and a natural creek bed.

{¶ 36} Thus the entire area north of a natural creek bed is commercial—including a Jiffy Lube and huge office parks—except for a few houses.

{¶ 37} In the past ten years—and according to the Blusts for as long as they can remember—Blue Ash has denied only one request for a zoning change: theirs.

### Arbitrary, Capricious, and Absurd

{¶ 38} The Blusts are challenging the zoning ordinance as applied to them, not on its face. And as applied to them, the ordinance is unconstitutional. The property's value as "residential" has decreased almost to the point of being worthless. It has value only for commercial use. Granting permission for the surrounding office buildings, commercial uses, and a Jiffy Lube next door—and denying the Blusts a zone change for a dentist office—is akin to confiscation of the Blusts' property.

{¶ 39} The city claims that it denied the Blusts' application to preserve the "residential nature" of the neighborhood. What? When the "neighbors" are Jiffy Lube and humongous office parks?

{¶ 40} The city arbitrarily chose the Blusts' property as the cut-off point between residential and commercial. The city argued that the area to the south of the Blusts' property was strictly residential. Yes, there were five or six houses to the south of the property. But to call the character of the neighborhood north of the creek bed residential is comical.

{¶ 41} A natural creek bed would serve as an ideal boundary. But instead, the city chose the Blust property to be its boundary—its line in the sand—between commercial and residential. And only on that side of the street—the city allowed developers *directly across the street* to raze single-family houses to build the office park. Why allow high-traffic commercial businesses to the north, east, and west—allowing the owners of those properties to realize their value—but not let the Blusts sell their property to a dental group?

{¶ 42} Furthermore, the Blusts clearly demonstrated that the zoning designation was "not substantially related to the public health, safety, morals or general welfare." [18]

{¶ 43} A dental practice would probably not destroy Blue Ash's public health or morals. The onliest other reason cited by the city—other than preserving the "residential" character of the neighborhood—was traffic. Not likely. How could a small dental practice (three dentists) create significant additional traffic in this area, especially since the bar, the Jiffy Lube, the office parks, the gas stations, and *another* dental practice are within spitting distance of the Blusts' property? If these businesses did not create a traffic problem, then a small dental practice would not put traffic over the edge.

{¶ 44} The area is commercial. It has been for some time. Blue Ash has granted zoning changes to allow that use. Thus it has taken almost all of the Blusts' property's value as residential.

{¶ 45} This zoning is simply an arbitrary, capricious, and absurd line in the sand—long after the beach has washed away.

---

18. *Mayfield–Dorsh, Inc. v. S. Euclid* (1981), 68 Ohio St.2d 156, 157, 22 O.O.3d 388, 429 N.E.2d 159.