**LOCAL NO. 74, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES et al., Appellants,**

v.

**CITY OF WARREN et al., Appellees.**

[Cite as *Local No. 74, Am. Fedn. of State, Cty. & Mun. Emps. v. Warren*, 174 Ohio App.3d 66, 2007-Ohio-6253.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2006–T–0125.

Decided Nov. 21, 2007.

Michael D. Rossi, for appellants.

Gregory V. Hicks, Warren Law Director, and James R. Ries, Assistant Law Director, for appellees.

CYNTHIA WESTCOTT RICE, Presiding Judge.

{¶ 1} Appellants, Local No. 74, American Federation of State, County and Municipal Employees ("the union") and Richard DiVencenzo, Sharon Woodward, Angela Lewis, and Rose Wilson ("the individual appellants") appeal the judgment of the Trumbull County Court of Common Pleas in favor of appellees, the city of Warren and its auditor.

{¶ 2} At issue is whether appellants are entitled to monetary relief pursuant to the trial court's previous declaratory judgment entered in 2002. The prior judgment found that the treasurer's letter, which is the subject of this case, was "final, conclusive and binding" on appellee. The letter modified the terms of the 1994 collective bargaining agreement ("CBA") and set rates of pay to be effective through 1999. The 2002 entry was silent as to the effect of the adoption of the subsequent collective bargaining agreement in 1997.

{¶ 3} The trial court's judgment before this court is an attempt to modify this prior final judgment. Although the court's judgment is supported by reason and common sense, it is in conflict with its prior final and binding entry. The city did not appeal the 2002 entry or request a modification from the trial court in light of the subsequent CBA. As a result, the city is precluded by collateral estoppel from challenging the final and binding nature of the treasurer's agreement. A final judgment is conclusive unless the judgment is reversed, modified, or

vacated. Because there is no law that authorizes courts to ignore final judgments, we must reverse and remand this case.

{¶ 4} This is the third time that this court has considered the issues raised in this appeal. Between January 1, 1994, and December 31, 1996, a CBA was in effect between the union and the city. Each individual appellant is an employee of the city's income tax department and a member of the union. The CBA included, as Article 17, a provision that allowed the city to change an employee's rate of pay if his job description was altered.

{¶ 5} In late 1996, Warren treasurer Patricia Leon–Games, acting on behalf of the city, met with representatives from the union concerning the adjustment of the rates of pay of the individual appellants. Pursuant to Article 17 of the CBA, the parties reached an agreement regarding changes in the job descriptions for, among others, the individual appellants and their rates of pay.

{¶ 6} On December 12, 1996, Leon–Games sent a letter to the city auditor, appellee David Griffing, setting forth the terms of that agreement, including the rates of pay for the individual appellants for the remainder of 1996 and for 1997, 1998, and 1999.

{¶ 7} At approximately the same time, the city started to negotiate a new CBA with the union. This CBA was completed in May 1997 and covered the same period covered by the agreement negotiated by treasurer Leon–Games and the union, i.e., from January 1, 1997, through December 1999. The new CBA included provisions concerning the rates of pay for the individual appellants that were lower than the rates referenced in the Leon–Games letter.

{¶ 8} Before the new CBA was finalized, the auditor refused to implement the pay raises outlined in the treasurer's letter. On February 11, 1997, the union and the individual appellants filed a declaratory judgment action against the city in the trial court in Common Pleas Case No. 97–CV–676, seeking a judgment declaring that the agreement between the treasurer and the union was a contract binding on the city pursuant to Article 17 of the previous CBA ("the 1997 declaratory judgment action").

{¶ 9} The matter was heard by a magistrate, who on January 27, 1999, issued his decision recommending dismissal for failure to exhaust administrative remedies since the individual appellants had failed to file a grievance before filing their complaint. The trial court approved the magistrate's decision. The union appealed in *Local No. 74, Am. Fedn. of State, Cty., & Mun. Emps. v. Warren* (Apr. 13, 2001), 11th Dist. No. 99–T–0175, 2001 WL 369691. This court reversed the trial court's decision, holding that because the union and the city, through Leon–Games, had reached an agreement concerning the rates of pay of the individual appellants, there was no dispute and thus no need to file a grievance.

This court held: "The parties to the CBA reached a final, binding agreement." Id. at *2.

{¶ 10} On remand, the magistrate concluded that Leon–Games had sufficiently changed the job descriptions of the individual appellants to properly invoke Article 17 of the prior CBA. He found that Leon–Games had the authority to act on behalf of the city in negotiating the new rates of pay under the separate agreement. He recommended the separate agreement, as set forth in Leon–Games's letter, be declared "final, conclusive, and binding on the * * * City." No objections were filed by appellees regarding the magistrate's decision.

{¶ 11} On November 8, 2002, the trial court adopted the magistrate's recommendation and entered declaratory judgment in favor of the union and the individual appellants. The trial court in its judgment entry found that "the agreement reached by the City and the Union * * * on changes in job descriptions and rates of pay as set forth in Treasurer Leon–Games' letter dated December 12, 1996, and entered pursuant to Article 17 of the Collective Bargaining Agreement * * * is final, conclusive, and binding on the Defendant City." No appeal was taken from this judgment by appellees.

{¶ 12} Following the trial court's judgment, the city paid the individual appellees in accord with the pay rates set forth in the Leon–Games letter from December 20, 1996, to December 31, 1996. However, with respect to the period from January 1, 1997, until December 31, 1999, appellees refused to pay the individual appellants the difference between the rates set forth in the 1997 CBA and those outlined in the Leon–Games letter.

{¶ 13} Then, in 2003, the individual appellants filed an original mandamus action in this court, entitled *State ex rel. DiVincenzo v. Griffing,* 11th Dist. No. 2003–T–0050, 2004-Ohio-1961, 2004 WL 833420 ("the mandamus action"). In that action, the individual appellants sought an order requiring the city to pay the additional pay under the Leon–Games letter. Appellants argued that the city had a legal obligation under the trial court's previous judgment to pay them the difference between the pay rates referenced in the Leon–Games agreement and those rates set forth in the 1997 CBA. This court denied the writ, holding that appellees had an alternative remedy by way of an action to enforce their declaratory judgment under R.C. 2721.09.

{¶ 14} Thereafter, on April 29, 2004, appellants filed this action, pursuant to R.C. 2721.09, seeking "further relief" pursuant to the November 8, 2002 declaratory judgment in the form of a money judgment against the city for the difference between the wages they were paid and those they would have received had they been paid under the terms of the Leon–Games letter from January 1, 1997, through December 31, 1999.

{¶ 15} The trial court, in its judgment entry dated December 11, 2006, which is the judgment entry at issue here, found that after Leon–Games entered into the agreement with the union, the later 1997 CBA "replaced and took precedence over" the rates of pay set forth in the December 12, 1996 agreement with Leon–Games. The court further found that because the individual appellants had received the amounts due under the Leon–Games letter from December 20, 1996, to December 31, 1996, they were not entitled to any further relief under R.C. 2721.09. Appellants now appeal this judgment asserting one assignment of error, as follows:

{¶ 16} "The trial court erred in entering final judgment in favor of defendant-appellees [sic] and dismissing the complaint."

{¶ 17} Appellants argue that because the Leon–Games agreement was found to be final, binding, and conclusive by the trial court in its November 8, 2002 declaratory judgment, that agreement takes precedence over the 1997 CBA pursuant to the law-of-the-case doctrine. The issue presented in this appeal is whether the agreement evidenced in the December 12, 1996 Leon–Games letter remains binding on the city. We hold that it does.

{¶ 18} Under the doctrine of the law of the case, the decision of an appellate court in a case establishes the law of that case for all subsequent proceedings therein, not only in the trial court but also in subsequent proceedings in the same reviewing court. *Robinson v. Pennsylvania RR. Co.* (1927), 117 Ohio St. 43, 158 N.E. 83. The purpose of the rule is to ensure that upon remand, the mandate of an appellate court is followed by the trial court. *Stemen v. Shibley* (1982), 11 Ohio App.3d 263, 265, 11 OBR 441, 465 N.E.2d 460.

{¶ 19} In *Local No. 74*, supra, the union's appeal from the trial court's dismissal of the 1997 declaratory judgment action for lack of filing a grievance, this court held that with the Leon–Games agreement, "[t]he parties to the CBA reached a final, binding agreement." Id. at *2. Such holding would establish the law of that case for all later proceedings *in that case*. R.C. 2721.09 provides that an application for further relief can be made in the declaratory judgment action. That section provides:

{¶ 20} "[W]henever necessary or proper, a court of record may grant further relief based on a declaratory judgment * * * previously granted under this chapter. The application for the further relief shall be by a complaint filed in a court of record with jurisdiction to grant the further relief. If the application is sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment * * * to show cause why the further relief should not be granted forthwith."

{¶ 21} In the mandamus action, this court recognized that a petition for additional relief can be made in the declaratory judgment action. This court held: "[A] petition for additional relief before the trial court would be a continuation of an action in which the trial court * * * [is] already familiar with the basic facts of the case. Under such circumstances, the trial court should be able to rule upon the petition without taking any additional evidence." *Griffing*, 2004-Ohio-1961, 2004 WL 833420, at ¶ 25.

{¶ 22} We note that if appellants had filed their request for further relief in the declaratory judgment action, as permitted by the statute, this court's holding in the appeal of that case, i.e., that the Leon–Games agreement is final and binding, would have established the law of the case for all subsequent proceedings. However, the law-of-the-case doctrine does not apply here because the instant action, which seeks a money judgment pursuant to the court's previous declaratory judgment, was filed as a separate action.

{¶ 23} Based on our review of the record, we have determined that appellees' current challenge to the trial court's 2002 declaratory judgment is barred by res judicata. The issue preclusion aspect of res judicata, referred to as collateral estoppel, precludes the relitigation of particular facts or issues previously determined between the same parties from being litigated in a different cause of action. *State ex rel. G & M Tanglewood, Inc. v. Desiderio*, 11th Dist. No. 2003–G–2497, 2004-Ohio-5309, 2004 WL 2803360, at ¶ 26.

{¶ 24} The trial court in its November 8, 2002 declaratory judgment found that the agreement outlined in the December 12, 1996 Leon–Games letter, which included the rates of pay for the individual appellants for the remainder of 1996, 1997, 1998, and 1999, was final, conclusive, and binding on the city. The binding nature of the Leon–Games agreement was thus actually adjudicated in that action. The parties to the declaratory judgment action are identical to the parties in the present action. The cause of action presented in the instant case is different and separate from the cause of action asserted in the 1997 declaratory judgment action in that the declaratory judgment action sought a declaration of appellants' rights, while the instant action seeks further relief pursuant to the previous declaratory judgment. As a result, the city is precluded by collateral estoppel from challenging the final and binding nature of the Leon–Games agreement.

{¶ 25} We do not agree with appellees' argument that the trial court's judgment is superseded by the 1997 CBA under the doctrines of accord and satisfaction, release, or waiver. These defenses were available to appellees when the trial court entered its November 8, 2002 judgment declaring the December 12, 1996 Leon–Games letter to be "final, conclusive, and binding" on the city.

Because the city never objected to the 2002 magistrate's decision and never appealed the trial court's November 8, 2002 judgment entry, the city waived these defenses, including any claim of error by the trial court in failing to consider the effect of the subsequent CBA on the 1996 Leon–Games agreement. They therefore cannot be asserted in these proceedings to collaterally attack the trial court's November 8, 2002 judgment.

{¶ 26} Appellees concede that the trial court in its November 8, 2002 judgment declared that the agreement set forth in the treasurer's December 12, 1996 letter was "final, conclusive, and binding" on the city, but argue that the provisions of the letter were only binding for the balance of 1996 and that this agreement was subject to "subsequent, mutual agreement of the parties." However, the trial court's judgment entry found the Leon–Games agreement, which outlined the rates of pay for the individual appellants from December 1996 to December 31, 1999, to be binding on the city and found nothing more, even though it had before it as a joint exhibit the 1997 CBA.

{¶ 27} A judgment is a decree or any order from which an appeal lies. Civ.R. 54(A). Under a judgment, the rights of the parties are determined. It is a final determination of a court of competent jurisdiction on matters submitted to it. *State ex rel. Curran v. Brookes* (1943), 142 Ohio St. 107, 26 O.O. 287, 50 N.E.2d 995. It is the judicial act that adjudicates all issues and fixes the rights and liabilities of the parties. *Rowe v. Rowe* (1990), 69 Ohio App.3d 607, 613, 591 N.E.2d 716. A final judgment is conclusive as long as the judgment remains unreversed, unmodified, and unvacated. 63 Ohio Jurisprudence 3d (1979) Judgments, Section 351.

{¶ 28} While the parties entered a CBA in 1997, which set forth the rates of pay for the individual appellants for the same period covered by the Leon–Games agreement, that agreement had been held by the trial court in its November 8, 2002 judgment entry to be final and binding. The trial court's judgment was never reversed, modified, or vacated. A final judgment is not automatically cancelled by a later, inconsistent agreement of the parties. If the city believed that the 1997 CBA superseded the 2002 judgment approving the Leon–Games agreement, it was incumbent on the city to obtain the consent of the union to vacate or modify the judgment to reflect the terms of the 1997 CBA or at least to obtain a waiver by the union of its right to enforce the November 8, 2002 judgment. The city failed to do either and now finds itself bound by the CBA and also by the trial court's November 8, 2002 declaratory judgment.

{¶ 29} Appellees argue that a similar situation occurred just prior to the creation of the previous CBA in effect from 1994 until December 31, 1996, which should guide our decision here. In November 1993, Leon–Games entered into an agreement with the union concerning rates of pay for the individual appellants,

which was inconsistent with the later 1994 CBA. However, in the 1993 Leon–Games letter, the time period was open-ended. In a declaratory judgment action filed in 1995, entitled *Local No. 74, Am. Fedn. of State, Cty., & Mun. Emps. v. Warren* (1995), Warren C.P. No. 95–CV–300, the trial court found that the 1994 CBA prevailed over the 1993 Leon–Games agreement and limited the application of that letter agreement to the end of 1993. We do not agree that the trial court's conclusion concerning the 1994 CBA is binding or even persuasive here. First, unlike the 1996 Leon–Games agreement, the 1993 Leon–Games agreement was open-ended. Second, unlike the 1996 agreement, the 1993 Leon–Games agreement was never found to be binding in a final judgment.

{¶ 30} We observe that the 1993 Leon–Games letter and subsequent litigation should have made the city aware of the effect of the trial court's November 8, 2002 judgment entry. While the trial court in the 1995 declaratory judgment action had found that the 1994 CBA superseded the 1993 Leon–Games letter, the trial court in its November 8, 2002 judgment entry found the 1996 Leon–Games letter to be binding on the city. The city should have known that if it did not appeal that judgment, it would continue to be bound by it.

{¶ 31} In light of the 1997 CBA, the trial court obviously attempted to achieve a just result by limiting the effect of the 1996 Leon–Games letter and by giving effect to the parties' later CBA. In the judgment entry at issue here, the trial court construed its November 8, 2002 judgment to limit the effect of the 1996 Leon–Games letter to the end of 1996. Certainly, a trial court can interpret its earlier judgment; however, it can do so only if the judgment is ambiguous or uncertain. *Bishop v. Bishop* (Apr. 15, 2002) 5th Dist. No. 2001CA00319, 2002 WL 596825, *2. However, there is nothing ambiguous or uncertain about the trial court's November 8, 2002 judgment entry. It specifically refers to the December 12, 1996 Leon–Games letter and found its terms to be final, conclusive, and binding on the city. That letter specifically refers to the affected employees, provides specific rates of pay, and lists the covered time periods for those pay rates. As a result, consistent with the trial court's November 8, 2002 judgment, we hold that the 1996 Leon–Games agreement, including the rates of pay set forth therein from December, 1996 until December 31, 1999, is binding on appellees.

{¶ 32} For the reasons stated in the opinion of this court, it is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

TRAPP, J., concurs.

CANNON, J., dissents.

CANNON, J., dissenting.

{¶ 33} I must respectfully dissent from the majority decision herein.

{¶ 34} Appellants rely on the judgment entry dated November 8, 2002. That entry ruled that the Leon–Games letter dated December 12, 1996, "rendered pursuant to Article 17 of the Collective Bargaining Agreement which is the subject of this case is final, conclusive and binding on the Defendant City." (Emphasis added.) Article 17 of the applicable collective bargaining agreement ("CBA") addressed the ability of the city to change an employee's rate of pay if his or her job description is altered. As such, the CBA in effect on December 12, 1996, was the CBA covering the period January 1, 1994, through December 31, 1996. The record reflects, in May 1997, that a subsequent CBA was entered into covering a three-year period from January 1, 1997, through December 31, 1999. Quite simply, a letter dated December 12, 1996, could not have been rendered pursuant to a CBA that had yet to be ratified. The "final, conclusive and binding" effect on the city applied only to the CBA in effect at that time, and only until some subsequent, potentially modifying agreement between the parties went into effect.

{¶ 35} I am in agreement with the December 11, 2006 entry of the trial court. The trial judge in case No. 95–CV–300 concluded, and the trial judge in this case re-affirmed, that "as of the effective date of the successor CBA (January 1, 1997), the rates of pay set forth therein 'replaced and took precedence over' the rates of pay set forth in the earlier agreement between Leon–Games and Plaintiff." This is not only a correct statement of law, but frankly the only analysis that makes sense.

{¶ 36} In this case, there is no dispute that appellants are members of the collective bargaining unit. There is a stipulation that the rates of pay and job classifications that pertain to them are incorporated in the CBA effective January 1, 1997. They are, under the law, parties to the agreement that was ratified by the members of AFSCME Local 74.

{¶ 37} In order to accept appellants' argument, there would have to be an unwritten "exception" to the plain terms of the 1997 CBA. That exception, offered by appellants, is the Leon–Games letter dated December 12, 1996. If appellants understood the Leon–Games letter to be binding and effective with regard to their rates of pay and job classifications, this letter, or its terms, should have been clearly and unequivocally incorporated into the January 1, 1997 CBA. However, neither the Leon–Games letter nor its terms were incorporated into the

1997 CBA. To the contrary, the 1997 CBA clearly states: "This Agreement supersedes, as of January 1, 1997, the Agreement effective January 1, 1994." The Leon–Games letter, as discussed above, was rendered pursuant to the January 1, 1994 CBA. To suggest that it supersedes a subsequent CBA that clearly states otherwise is not fair to the city.

{¶ 38} One should be able to look at the four corners of the 1997 CBA and determine the outcome of collective bargaining as to each employee's compensation and job classification as of the effective date of the agreement. The only way to modify this CBA should be a subsequent agreement, such as a letter dated after the effective date of the CBA. To hold the city responsible for any "side agreements" made prior to a clearly drafted and negotiated CBA would be contrary to law.

{¶ 39} The trial court, based on its December 11, 2006 ruling, makes it clear that it did not intend to address the issue of the "term" of the binding effect of the Leon–Games December 12, 1996 letter in its November 8, 2002 entry. In reviewing the recommendation of the magistrate regarding the evidence presented, the "term" never appeared to be at issue. It would stand to reason that the trial court entry did not address it specifically. Apparently the appellee also applied the same interpretation as the trial court. Therefore, there would have been no reason for the appellee to appeal that decision. If there was a misconstruction on anyone's part regarding the import and intent of the November 8, 2002 judgment, it appears to be on the part of appellants.

{¶ 40} Therefore, at the risk of prolonging this case further, but in the interest of fairness, the trial court on remand should be permitted to vacate or clarify the November 8, 2002 order, specifically addressing the position of the trial court with regard to the enforceable "term" of the Leon–Games December 12, 1996 letter. This action would put both parties in a position to either appeal or accept the result.

{¶ 41} Therefore, I respectfully dissent from the majority in this case and feel the judgment of the trial court should be affirmed.