FOSTER et al., Appellants,

v.

WICKLIFFE, Appellee.

[Cite as *Foster v. Wickliffe,* 175 Ohio App.3d 526, 2007-Ohio-7132.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2006–L–053.

Decided Dec. 28, 2007.

530

Richard D. DiCicco and Louis A. Turi Jr., for appellants.

William C. Gargiulo, City of Wickliffe Police Prosecutor, for appellee.

COLLEEN MARY O'TOOLE, Judge.

{¶ 1} Martha A. and Gilbert C. Foster appeal the trial court's judgment entry denying their motion for summary judgment on the constitutionality and validity of City of Wickliffe Ordinance 2000–26 and on related claims. We affirm.

{¶ 2} The instant matter is the latest culmination in a series of disputes between the Fosters and the city of Wickliffe, appellee, relating to the city's attempt to prohibit parking or storage of recreational vehicles ("RVs") in the front yards of its residents.

{¶ 3} In December 1986, the city passed Ordinance 1986–58, which amended Section 351.16 of its traffic code to bar parking of motor homes or house vehicles in front yards between the hours of 9 p.m. and 6 a.m. In October 1991, the city passed Ordinance 1991–60, which amended Section 351.16 by defining the phase "front yard" and added "boats" and "boat trailers" to the prohibition. In May 1993, the city passed Ordinance 1993–2, which amended Section 351.16 by further

defining the term "front yard" and making violations of the section minor misdemeanors.

{¶ 4} After being cited multiple times for violations of Section 351.16, the Fosters filed their original complaint in the Lake County Court of Common Pleas under case No. 94 CV 000103 in January 1994. The Fosters sought, inter alia, a declaratory judgment finding Section 351.16 invalid and unconstitutional. The case was consolidated with a separate case, case No. 94 CV 000102, i.e., *Donsante v. Wickliffe*, in which the plaintiff sought the same relief.

{¶ 5} Upon criminal prosecution on the various citations in the Willoughby Municipal Court, the Fosters moved to have the citations dismissed. In May 1994, the municipal court held Section 351.16, as amended, invalid and granted the Fosters' motion. The court held that off-street parking was subject to regulation within the city's zoning code in accordance with Section 1321 of the Codified Ordinances of the City of Wickliffe. Thus, because the amendments were not submitted to the Planning Commission prior to enactment in accordance with the city's charter, the ordinance was invalid. The city did not appeal this decision.

{¶ 6} On December 19, 1994, the Wickliffe City Council enacted Ordinance 1994–34, which amended Section 1321.50 of the city's planning and zoning code to prohibit parking of recreational vehicles on certain portions of residential lots and repealed Section 351.16. In doing so, the regulations were transferred from the traffic code to the planning and zoning code.

{¶ 7} In February 1995, the Fosters filed their first supplemental complaint to invalidate Wickliffe Ordinance 1994–34. Following a bench trial, the trial court found that the ordinance had been improperly enacted because the city had not advertised and held a public hearing. The court determined that Section 1321.50, as amended, was invalid and unenforceable.[1]

{¶ 8} In 1996, the city enacted Ordinance 1996–2, an ordinance essentially identical to Ordinance 1994–34. In June 1996, the Fosters filed their second supplemental complaint, challenging this latest enactment. The parties agreed that the testimony, exhibits, and other evidence admitted at the earlier bench trial relating to Ordinance 1994–34 were to be considered in determining the validity and constitutionality of Ordinance 1996–2. On February 12, 1998, the trial court denied the Fosters' claims and held that Section 1321.50, as amended

---

1. This judgment was not a final, appealable order, because the court did not dispose of all of appellants' claims and did not affix the necessary Civ.R. 54(B) language to the judgment entry. The entry suggests, however, that this was intentional, as the court explicitly reserved judgment on appellants' additional claims for a later date.

by Ordinance 1996–2, was valid and enforceable. This judgment disposed of all of appellants' claims and was therefore a final, appealable order.

{¶ 9} Appellants appealed to this court, and on October 29, 1999, in *Donsante v. Wickliffe* (Oct. 29, 1999), 11th Dist. Nos. 98–L–046 and 98–L–047, 1999 WL 1074115, this court reversed the trial court's judgment and held Ordinance 1996–2 invalid due to fatal procedural flaws in its enactment.

{¶ 10} First, this court held that the notice pertaining to the public hearing on the ordinance was inadequate. The notice merely informed the public that Ordinance 1996–2 was intended to regulate the parking of recreational vehicles on residential property. *Donsante* at *1–2. This court reasoned that the definition of "recreational vehicle" set forth at R.C. 4501.01(Q), read in conjunction with the published notice, sufficiently informed the public of the general nature of vehicles comprehended by the notice. *Donsante* at *2. However, Ordinance 1996–2 also purported to regulate the parking of boats, boat trailers, trucks, and vehicles exceeding a three-quarter-ton rating. Id. at *2. This court held that nothing in the statutory definition of recreational vehicle could put owners of these on notice concerning the true extent of the ordinance and, consequently, that the published notice of the hearing on Ordinance 1996–2 was inadequate. Id. at *3.

{¶ 11} Second, this court determined the city had failed to submit the legislation amending the planning and zoning code to a referendum of the voters as required by Section 3, Article XI of the Charter of the City of Wickliffe. *Donsante* at *3–4. This court mooted out various other assignments of error concerning the constitutionality of Ordinance 1996–2 and entered judgment for the plaintiffs. Id. at *4.

{¶ 12} The city appealed to the Supreme Court of Ohio. On February 2, 2000, that court dismissed the matter, finding "no substantial constitutional question." *Donsante v. Wickliffe* (2000), 88 Ohio St.3d 1412, 723 N.E.2d 118.

{¶ 13} After the Supreme Court's dismissal, the city drafted Ordinance 2000–26, which was substantively identical to Ordinance 1996–2. The ordinance was referred to the planning commission, and a notice of a public hearing was published twice in a local newspaper. The public notice stated that the hearing would concern an ordinance titled "Residential Off Street Parking" to "regulate the parking of recreational vehicles on residential property." The notice further provided that if the ordinance was adopted and approved by the electorate, it would amend the city's zoning code concerning the "parking of recreational vehicles, trucks and other vehicles on residential property." The hearing occurred on August 7, 2000. On August 14, 2000, the Wickliffe City Council adopted the ordinance unanimously and placed it on the ballot for the upcoming election. On November 7, 2000, the voters of Wickliffe passed the ordinance 3,667 to 2,378.

{¶ 14} On October 10, 2001, the Fosters filed a "Third Supplemental Complaint for Declaratory Judgment, Temporary and Permanent Injunctions," under the same trial court number as the matter adjudicated by this court in 1999 and dismissed by the Supreme Court in 2000. The complaint specifically alleged that Ordinance 2000–26 should be declared invalid because, inter alia, it violated the Fosters' due process rights, rights under 42 U.S.C. 1983, and equal protection rights and involved taking of their property in violation of the Fourteenth Amendment. The Fosters also asserted that they had a valid pre-existing, nonconforming use of their property prior to the passage of this ordinance and accordingly moved to permanently enjoin enforcement of Ordinance 2000–26 as it pertained to them.

{¶ 15} On February 10, 2003, the city moved for summary judgment. On June 3, 2003, the Fosters filed their response motion and moved the trial court for summary judgment in their favor. On March 13, 2006, the trial court granted the city's motion for summary judgment with respect to 10 of 11 issues raised by the Fosters. It held that (1) the city could use police to enforce the ordinance, (2) the city did not negligently enact the ordinance so as to cause the Fosters to continuously defend themselves against citations at great cost and expense, (3) the city did not intentionally enact the ordinance so as to cause the Fosters to continuously defend themselves against citations at great cost and expense, (4) the city provided sufficient notice to publicly inform citizens of the nature and character of the ordinance, (5) the ordinance was not arbitrary, capricious, confiscatory, and discriminatory, (6) the ordinance did not deprive the Fosters of the lawful use of their property, (7) the ordinance did not violate the Fosters' equal protection rights, (8) the ordinance did not undermine a constitutionally protected property interest in violation of due process, (9) the ordinance did not amount to an unconstitutional taking, and (10) the ordinance did not violate the Fosters' rights under 42 U.S.C. Section 1983 by depriving them of a property interest in their land.

{¶ 16} However, the trial court denied the city's motion as it related to the Fosters' assertion that they had a valid pre-existing, nonconforming use of their property prior to the passage of the ordinance. On this issue, the trial court granted the Fosters' motion for summary judgment. In so ruling, the trial court concluded:

{¶ 17} "The court finds that there is no genuine issue of material fact that the Fosters' parking of an RV in front of their house poses no immediate and direct threat to public health, safety or morals. It has not presented any traffic or fire hazards, has not significantly degraded property values and has not been the source of a significant amount of neighborhood complaints. It is well maintained and is not unsightly other than its bulk. The court finds that there is no genuine

issue of material fact that the Fosters prior non-conforming use is not a nuisance and that as a matter of law, they are entitled to continue their non-conforming use.

{¶ 18} " * * * The City of Wickliffe is permanently enjoined from enforcing Ordinance 2000–26 against Martha and Gilbert Foster for parking a recreation vehicle on a concrete pad at the left front side of their house adjacent to the property line."

{¶ 19} In sum, the city was awarded summary judgment on all claims with the exception of the Fosters' assertion of a valid pre-existing use. As a result, the Fosters retained the right to permanently park their RV beside their house without the threat of citation. Despite obtaining the foregoing relief, the Fosters filed this appeal April 6, 2006, asserting that the trial court erred by failing to award them summary judgment on the remainder of their claims.

{¶ 20} The Fosters assign ten errors:

{¶ 21} "[1.] The trial court erred to the appellants' prejudice in denying appellants' motion for summary judgment and granting appellee's motion for summary judgment with the exception to holding of non-conforming use.

{¶ 22} "[2.] The trial court erred to the appellants' prejudice in considering and determining the issues of liability and damages contrary to the orders of the trial court establishing the 'law of the case' contrary to the bifurcation orders.

{¶ 23} "[3.] The trial court erred by not following the 'law of the case' doctrine, to the prejudice of the appellants, as set forth in the *Donsante* case, supra, mandating that 'boats and boat trailers' must be included in the notice of hearing publication.

{¶ 24} "[4.] The trial court erred to the appellants' prejudice in finding that the summary published by the appellee, when enacting Ordinance No. 2000–26, complied with codified Ordinance No. 1341.40.

{¶ 25} "[5.] The trial court erred to the appellants' prejudice in granting summary judgment to appellee to the effect that the building commissioner is not the sole enforcer of its zoning code, and ruling that the use of the police department was proper.

{¶ 26} "[6.] The trial court erred to the appellants['] prejudice in finding that the appellee did not negligently or intentionally enacted [sic] ordinances that were not valid.

{¶ 27} "[7.] The trial court erred to the prejudice of the appellants in granting summary judgment to the appellee that Ord. No. 2000–26 is not capricious, arbitrary, confiscatory, discriminatory and unconstitutional.

{¶ 28} "[8.] The trial court erred to the prejudice of the appellants in granting summary judgment to appellee's with respect to appellants['] complaint as to C–13, C–14, C–15 and C–18 and additional causes of action C–1, C–2, C–3 and C–4.

{¶ 29} "[9.] The trial court erred to the prejudice of the appellants' [sic] in granting summary judgment to appellee with respect to appellants' claim that Ordinance No. 2000–26 does not have a reasonable relationship between the health, safety and general welfare of the City.

{¶ 30} "[10.] The trial court erred to the prejudice of the appellants when it concluded that the prohibitions of Ordinance No. 2000–26 were not capricious, arbitrary, confiscatory and discriminatory."

{¶ 31} Preliminarily, we deal with a jurisdictional problem raised by this appeal. The Fosters, the city, and the trial court treated the case as a continuation of case No. 94 CV 000103. This seems incorrect. That case dealt with the validity of former Ordinance 1996–2. In *Donsante,* we found that ordinance invalid and remanded, having entered judgment for plaintiffs. The city's appeal to the Supreme Court was declined. Consequently, that case was complete, substantively and procedurally. This case deals with something different: the validity of Ordinance 2000–26. While substantially the same as former Ordinance 1996–2, the validity of the new ordinance is a separate issue. This matter should have been filed as a new case.

{¶ 32} Nevertheless, we do not believe this procedural flaw deprived the trial court of jurisdiction to entertain this matter. Civ.R. 3(A) provides: "A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant * * *." In this case, the Fosters filed their "Third Supplemental Complaint" on October 10, 2001, and served it personally on the city's law director that same day. The city answered and has never raised any question of jurisdiction. The Lake County Court of Common Pleas certainly has subject-matter jurisdiction of the issues involved, and it has the power to consolidate the records in the former, related cases with this case.

{¶ 33} Consequently, we turn to the merits of the appeal.

{¶ 34} " 'Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' *Holik v. Richards,* 11th Dist. No. 2005–A–0006, 2006-Ohio-2644 [2006 WL 1459677], ¶ 12, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293 [662 N.E.2d 264]. 'In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party.' Id. citing Civ.R. 56(C). Further, the standard in which we review the granting of a motion for summary judgment is de novo.

Id. citing *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105 [671 N.E.2d 241].

{¶ 35} "Accordingly, '[s]ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' *Brunstetter v. Keating,* 11th Dist. No. 2002–T–0057, 2003-Ohio-3270 [2003 WL 21437016], ¶ 12, citing *Dresher*[, 75 Ohio St.3d] at 292 [662 N.E.2d 264]. 'Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' Id., citing *Dresher*[, 75 Ohio St.3d] at 293 [662 N.E.2d 264].

{¶ 36} " * * *

{¶ 37} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and nonmoving party. In *Dresher v. Burt,* the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Misteff* [*Mitseff*] *v. Wheeler* (1988), 38 Ohio St.3d 112 [526 N.E.2d 798].

{¶ 38} "The court in *Dresher* went on to say that paragraph three of the syllabus in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108 [570 N.E.2d 1095], * * * is too broad and fails to account for the burden Civ.R. 56

places upon a *moving* party. The court, therefore, limited paragraph three of the syllabus in *Wing* to bring it into conformity with *Misteff* [*Mitseff*]. (Emphasis added.)

{¶ 39} "The Supreme Court in *Dresher* went on to hold that when *neither* the moving nor nonmoving party provides evidentiary materials demonstrating there are no material facts in dispute, the moving party is not entitled [to] judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, 'and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' Id. at 276. (Emphasis added.)" *Welch v. Ziccarelli*, 11th Dist. No. 2006–L–229, 2007-Ohio-4374, 2007 WL 2410102, at ¶ 36–37, 40–42.

{¶ 40} As the Fosters' first and eighth assignments of error mount omnibus attacks on the trial court's judgment, we consider the other assignments of error first, to winnow the issues.

{¶ 41} By their second assignment of error, the Fosters allege that the trial court violated the law-of-the-case doctrine, by granting the city summary judgment on their claims for damages pursuant to 42 U.S.C. § 1983. The Fosters argue that the trial court, in the actions relating to the prior ordinances, bifurcated the issues of the validity of the ordinances and the Fosters' entitlement to damages, reserving the latter for future proceedings. They further claim that the trial court and parties agreed, during pretrial, to bifurcate these issues in the instant case.

{¶ 42} "Under the doctrine of the law of the case, the decision of an appellate court in a case establishes the law of that case for all subsequent proceedings therein, not only in the trial court but also in subsequent proceedings in the same reviewing court. *Robinson v. Pennsylvania Rd. Co.* (1927), 117 Ohio St. 43, 158 N.E. 83. The purpose of the rule is to ensure that upon remand, the mandate of an appellate court is followed by the trial court. *Stemen v. Shibley* (1982), 11 Ohio App.3d 263, 265, 11 OBR 441, 465 N.E.2d 460." *Local No. 74, Am. Fedn. of State, Cty. & Mun. Emps. v. Warren*, 11th Dist. No. 2006–T–0125, 174 Ohio App.3d 66, 2007-Ohio-6253, 880 N.E.2d 954, at ¶ 18.

{¶ 43} As we cautioned above, the instant case is *not* the same as that concerning ordinances prior to Ordinance 2000–26 and culminating in the Supreme Court's declination of jurisdiction in *Donsante*, 88 Ohio St.3d 1412, 723 N.E.2d 118. Consequently, the law-of-the-case doctrine has no application.

{¶ 44} Further, the Fosters do not point to any order of the trial court in the record mandating that the issues of validity of the ordinance and damages be bifurcated. Even if they did so, we do not believe that any error would attend

the trial court's decision to consider these issues together. Civ.R. 56 directs trial courts to grant summary judgment as a matter of law if no genuine issues of material fact exist to support a claim. Consequently, the trial court was within its purview in granting the city summary judgment on the Fosters' claims relating to damages if it determined that the Fosters had not supported them.

{¶ 45} The second assignment of error is without merit.

■ {¶ 46} By their third assignment of error, the Fosters assert that the law-of-the-case doctrine required the notice concerning the public hearing on Ordinance 2000–26 to contain the words "boats and boat trailers" and that the trial court erred in concluding the contrary. The Fosters premise their argument on our decision in *Donsante*, 1999 WL 1074115, at *2–3, wherein we concluded that the notice of public meeting concerning former Ordinance 1996–2 was insufficient to alert owners of various vehicles—including boats and boat trailers—that the proposed ordinance would affect their parking privileges.

{¶ 47} First, we note again that the law-of-the-case doctrine has no application herein. More significantly, we respectfully suggest that the Fosters misread our decision in *Donsante*. The notice of public hearing therein merely stated that the proposed ordinance would affect the parking of "recreational vehicles" in the city. Id. at *2. We turned to the definition of "recreational vehicle" set forth at R.C. 4501.01(Q) and determined that it was insufficiently broad to imply to owners of other vehicles specifically covered by the proposed ordinance that their parking privileges were at issue. *Donsante* at *2–3. In the instant case, the notice of public hearing concerning Ordinance 2006–26 stated that it would affect not merely "recreational vehicles" but "trucks and other vehicles" as well. The learned trial court correctly turned to the definitions of "truck" and of "vehicle" set forth at R.C. 4501.01(J) and (A), respectively, in determining that the notice was sufficiently broad to alert the owner of any vehicle to be affected by the proposed ordinance.

{¶ 48} The third assignment of error is without merit.

■ {¶ 49} By their fourth assignment of error, the Fosters assert that the notice of public hearing regarding Ordinance 2000–26 was insufficient under Section 1341.40 of the planning and zoning code of the city, entitled "Action by Council." Section 1341.40 requires that the published notice of public hearing "set forth * * * a summary of the proposed amendment [to the City's zoning]." The Fosters argue that the notice of public hearing concerning Ordinance 2000–26, as interpreted by the trial court applying the appropriate definitions from the Revised Code, is too vague to alert residents as to exactly what vehicles might be affected. They point to an admission by the city that the parking of various enumerated vehicles is not affected.

{¶ 50} We agree with the learned trial court's conclusion the notice given was sufficient as a matter of law to alert the city's residents that the parking of many types of vehicles would be affected by the proposed ordinance and that potentially affected residents needed to view the complete copy of the proposed ordinance. We note that Section 1341.40 requires only a summary of any proposed change to the zoning code to be included in the notice of public hearing. A summary is just that: it should not repeat everything contained in the item summarized.

{¶ 51} The fourth assignment of error is without merit.

{¶ 52} By their fifth assignment of error, the Fosters attack the trial court's conclusion that the city properly relied on its police department to issue them tickets for their alleged violations of Ordinance 2000–26. They characterize this use of the city's police as intimidation. They cite various sections of the city's zoning code for the proposition that the building commissioner is tasked with the duty of enforcing the zoning code. They argue that the section of the zoning code relied on by the trial court in concluding that the building commissioner could delegate this authority was added by amendment following the incidents that are the subject of their claims.

{¶ 53} Accepting the Fosters' contention that the specific zoning code provision relied on by the trial court is inapplicable would not lead us to find error in that court's conclusion. Ordinance 2000–26, at Section I. (j), itself provides that infractions are minor misdemeanors. As the trial court noted in its judgment entry, no provision of the city's zoning code prevents the building commissioner from using agents—including the police—in enforcing the law.

{¶ 54} The fifth assignment of error is without merit.

{¶ 55} By their sixth assignment of error, the Fosters allege that the trial court incorrectly denied their claim that the city enacted invalid ordinances regarding the parking of recreational vehicles negligently or intentionally, with the purpose of preventing them from litigating the issue of whether they had a valid, pre-existing, nonconforming use. Their evidence for this assignment of error is the fact that former Section 351.16 of the city's traffic code was found invalid by the Willoughby Municipal Court, that the trial court found former Ordinance 1994–34 invalid, and that this court held former Ordinance 1996–2 invalid. Fundamentally, the Fosters seem to allege that only negligence, or intentional conduct, could result in so many failures by the city to enact a valid regulation.

{¶ 56} We respectfully disagree. The invalidity of the former regulations found by the courts was premised on flaws in their enactment. The Fosters present no competent Civ.R. 56 evidence that the city, whether negligently or intentionally, enacted procedurally flawed zoning regulations for the purpose of

denying the Fosters a day in court, and we decline their invitation to make such an inference.

{¶ 57} The sixth assignment of error is without merit.

{¶ 58} By their seventh assignment of error, the Fosters assert that the trial court incorrectly found that Ordinance 2000–26 is not capricious, arbitrary, confiscatory, discriminatory, and unconstitutional. By their tenth assignment of error, they allege that the trial court incorrectly found that Ordinance 2000–26 is not capricious, arbitrary, confiscatory, and discriminatory. By their ninth assignment of error, they allege that the trial court incorrectly found that Ordinance 2000–26 bears a reasonable relationship to the health, safety, and general welfare of the city.

{¶ 59} The assignments of error being interrelated, so is our analysis.

{¶ 60} "A municipality or other zoning body is justified by its police powers to enact zoning for the public welfare and safety. The powers, not unlimited, need only bear a rational relation to the health, safety, morals or general welfare." *Goldberg Cos., Inc. v. Richmond Hts. City Council* (1998), 81 Ohio St.3d 207, 213–214, 690 N.E.2d 510, citing *Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303. "The burden of proof remains with the party challenging an ordinance's constitutionality, and the standard of proof remains 'beyond fair debate.'" Id. at 214, 690 N.E.2d 510, quoting *Cent. Motors Corp. v. Pepper Pike* (1995), 73 Ohio St.3d 581, at 584, 653 N.E.2d 639.

{¶ 61} We agree with the learned trial court that application of the foregoing principles to this dispute establishes that Ordinance 2000–26 bears a rational relation to the city's health, safety, morals, or general welfare and is not capricious, arbitrary, confiscatory, or discriminatory. The Fosters' principal argument in support of these claims is that the ordinance singles out recreational vehicles, boats and boat trailers, and smaller trucks for regulation, while not regulating many equally large or (possibly) unsightly vehicles. The argument is not well taken.

{¶ 62} The city might well choose to regulate the parking of large vehicles for the purpose of safety, in that such vehicles may obstruct sight lines along streets and block access to houses. This bears a rational relation to public safety. Cf. *Goldberg Cos.*, 81 Ohio St.3d at 213–214, 690 N.E.2d 510.

{¶ 63} The city may include in its zoning regulations provisions to improve or maintain aesthetics. *Hudson v. Albrecht, Inc.* (1984), 9 Ohio St.3d 69, 9 OBR 273, 458 N.E.2d 852, at paragraph one of the syllabus. Some people may consider recreational vehicles, boats, and boat trailers unsightly.

{¶ 64} There is no constitutional requirement that the city zone the parking of all large or unsightly vehicles, and the list of vehicles not subject to Ordinance 2000–26 presented by the Fosters seems to include mostly vehicles and trailers used for business purposes or services. The city might rationally distinguish between pleasure vehicles—like RVs and boats—and trucks or vans used for commercial purposes, for instance. This seems particularly true because recreational vehicles are, given the nature of Ohio's weather, likely to be stationary for large periods of the year, whereas commercial and service vehicles, being necessary for residents' livelihoods, move.

{¶ 65} It may be that the Fosters, under assignments of error seven and ten, are alleging discriminatory enforcement of Ordinance 2000–26 against them. They do not favor us with information as to where, in the voluminous record, evidence of such discriminatory enforcement might be found. However, even if this is part of their contentions under these assignments of error, the issue is not well taken.

{¶ 66} "Mere selective enforcement of a statute, including a zoning law, is not unconstitutional. *Machnics v. Sloe*, 11th Dist. No. 2004–G–2554, 2005-Ohio-935 [2005 WL 516520], at ¶ 63. To carry the heavy burden of showing discriminatory enforcement, a claimant cannot rely on the fact that others similarly situated have not been prosecuted. Id. The claimant must show that the selective enforcement was intentional. Id. This requires a prima facie showing of two elements: (1) that others similarly situated have not been prosecuted; and that the prosecution is invidious, being based on such considerations as race, religion or an attempt to prevent the exercise of constitutional rights. Id. at ¶ 63–64." *Bd. of Trustees of Chester Twp. v. Baumgardner*, 11th Dist. No. 2006–G–2721, 2007-Ohio-1783, 2007 WL 1113967, at ¶ 21.

{¶ 67} The Fosters do not point to any evidence of selective enforcement of Ordinance 2000–26 against them; they make no prima facie showing that any enforcement of the ordinance against them was invidious.

{¶ 68} In sum, the seventh, ninth, and tenth assignments of error are without merit.

{¶ 69} In their first assignment of error, the Fosters assert that genuine issues of material fact exist in relation to issues raised in the city's memorandum in support of its motion for summary judgment and refer us to parts III.A., III.B., and III.C. (a), (b), and (c) of that document as proof. We deal with these issues in order.

{¶ 70} Part III.A. of the city's memorandum in support of its summary judgment motion concerns the standards for application of Civ.R. 56. We do not see what bearing this has on the appeal. The issue is without merit.

{¶ 71} Part III.B. of the city's memorandum in support sets forth the law applicable to determining whether a zoning regulation is constitutional. We find nothing objectionable in it. The issue is without merit.

{¶ 72} Part III.C. of the city's memorandum in support concerns the alleged preclusive effect of the trial court's findings regarding the constitutionality of former Ordinance 1996–2 and the Fosters' right to a pre-existing use thereunder. These findings were made in 1998 but were not reached by this court in rendering our decision in *Donsante,* as we found that ordinance invalid due to improper enactment.

{¶ 73} We are dealing with Ordinance 2000–26, not former Ordinance 1996–2. The ordinances are substantially similar in content but are entirely different enactments. We do not consider that the trial court's 1998 judgment entry regarding former Ordinance 1996–2 has any effect, preclusive or otherwise, on these proceedings, and arguments relating to it are irrelevant. These issues are without merit, as is the first assignment of error.

{¶ 74} By their eighth assignment of error, the Fosters assert that the trial court erred in granting the city summary judgment on issues set forth at four paragraphs of the first cause of action in their Third Supplemental Complaint, as well as on four additional causes of action. They further set forth as issues (1) alleged error by the trial court in failing to bifurcate the consideration of the validity of Ordinance 2000–26 and damages under 42 U.S.C. Section 1983, and (2) whether the trial court erred due to failure to consider genuine issues of material fact raised by the Fosters.

{¶ 75} We deal with the stated issues raised by the Fosters first. Then we will proceed to consider, as separate issues, any allegations contained in the various paragraphs and counts of the Third Supplemental Complaint.

{¶ 76} We respectfully believe that the stated issues set forth by the Fosters in support of the eighth assignment of error have been disposed of in our discussion of their second assignment of error. Regarding bifurcation, the trial court was entitled to deal with their Section 1983 claim as a matter of law, in these summary judgment proceedings, if it found no Civ.R. 56 evidence supporting the claim in the record. It found no such evidence. Further, the simple fact that the Fosters presented evidence does not create a genuine issue of material fact under Civ.R. 56. The evidence must be relevant to the claims asserted.

{¶ 77} These issues are without merit.

{¶ 78} Under paragraph C–13 of their Third Supplemental Complaint, the Fosters alleged that the city improperly relied on its police to cite them for infractions of Ordinance 2000–26. This issue has been considered in our discussion of the fifth assignment of error and is without merit.

{¶ 79} Under paragraph C–14 of their Third supplemental Complaint, the Fosters alleged that Ordinance 2000–26 was negligently enacted. This issue has been considered in our discussion of the sixth assignment of error and is without merit.

{¶ 80} Under paragraph C–15 of their Third Supplemental Complaint, the Fosters alleged that the enactment of Ordinance 2000–26 was intentionally invalid. This issue has been considered in our discussion of the sixth assignment of error and is without merit.

{¶ 81} Under paragraph C–18(A.) of their Third Supplemental Complaint, the Fosters alleged that the notice of public hearing regarding Ordinance 2000–26 was defective. This issue has been considered in our discussion of the third and fourth assignments of error and is without merit.

{¶ 82} Under paragraph C–18(B.) of their Third Supplemental Complaint, the Fosters alleged that Ordinance 2000–26 is "arbitrary, discriminatory, vague and capricious in that it fails to cover vehicles of a similar nature and has no relation to the public peace, safety, health, or welfare of the city and serves no public purpose." These issues have been considered in our discussion of the seventh, ninth, and tenth assignments of error and are without merit.

{¶ 83} Under paragraph C–18(D.) of their Third Supplemental Complaint, the Fosters alleged that Ordinance 2000–26 was enacted due to a conspiracy by various members of the city's administration and council to deprive them of the lawful use of their property. The Fosters point to absolutely no evidence of such a conspiracy in the record. The issue is without merit.

{¶ 84} Under paragraph C–18(E.) of their Third Supplemental Complaint, the Fosters again alleged that the notice of public hearing regarding Ordinance 2000–26 was defective. We again find that this issue without merit.

{¶ 85} By "Additional Cause of Action C–1" of their Third Supplemental Complaint, the Fosters alleged that they were deprived of their due process rights under the Fifth Amendment of the United States Constitution, due to the city's attempt to deprive them of their use of their property and cause them financial hardship. By "Additional Cause of Action C–2," they alleged that the city's actions violated 42 U.S.C. Section 1983. That section "provides a remedy to persons whose federal rights have been violated by governmental officials." *1946 St. Clair Corp. v. Cleveland* (1990), 49 Ohio St.3d 33, 34, 550 N.E.2d 456. Since each of these claims demands an inquiry into due process, we analyze them together.

{¶ 86} The Fosters appear to claim a violation of the "substantive due process rights." However, "substantive due process" normally pertains to liberty interests secured by the United States Constitution. *1946 St. Clair Corp.* at 35,

550 N.E.2d 456. "Property is an individual entitlement grounded in state law * * *." *Asher Investments, Inc. v. Cincinnati* (1997), 122 Ohio App.3d 126, 136, 701 N.E.2d 400. Consequently, property rights are generally only protected by "procedural due process." Cf. *1946 St. Clair Corp.* at 34–35, 550 N.E.2d 456. Only the Fosters' property rights were potentially affected by the zoning ordinance in question. Federal due process rights usually being applicable to the states through the Fourteenth Amendment, we consider these issues under the rubric of the Fosters' 42 U.S.C. Section 1983 claim.

{¶ 87} "When the interest [of which a party is being deprived] is purely economic, the Constitution demands only that the [party] be given a meaningful opportunity to be heard." *1946 St. Clair Corp.* at 36, 550 N.E.2d 456, citing *Parratt v. Taylor* (1981), 451 U.S. 527, 543–544, 101 S.Ct. 1908, 68 L.Ed.2d 420. In this case, the Fosters received a more than adequate opportunity to be heard before the trial court. Further, "[t]o assert a claim under Section 1983, Title 42, U.S.Code * * * for deprivation without due process of a purely economic interest, a plaintiff must allege and prove inadequacy of state remedies." *1946 St. Clair Corp.*, at the syllabus. In this case, as the trial court noted, the Fosters cannot show any inadequacy in state remedies. They have successfully obtained a permanent injunction against the enforcement of Ordinance 2000–26 against them. Further, there is no evidence before us that they ever paid any citation or fine levied against them.

{¶ 88} These issues are without merit.

{¶ 89} By "Additional Cause of Action C–3" of their Third Supplemental Complaint, the Fosters alleged violation of their right to equal protection, under the Fourteenth Amendment to the United States Constitution, due to the actions of the city as described in each of the complaints filed by the Fosters throughout all of the various cases previously mentioned. We construe this as an allegation of discriminatory enforcement of Ordinance 2000–26 against them and find the issue without merit, for the reasons set forth in our discussion of the seventh, ninth, and tenth assignments of error.

{¶ 90} Under paragraph C–18(C) of their Third Supplemental Complaint, the Fosters alleged that Ordinance 2000–26 was designed to deprive them of the lawful use of their property. By "Additional Cause of Action C–4," they alleged that the ordinance constituted a taking of their property under the Fourteenth Amendment to the United States Constitution, and Article I, Section 19 of the Ohio Constitution. We consider these issues together.

{¶ 91} First, the United States Supreme Court has recently overruled its holding in *Agins v. Tiburon* (1980), 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106, which had established a two-part test for determining whether a taking in

violation of the United States Constitution had occurred. See, e.g., *Lingle v. Chevron U.S.A., Inc.* (2005), 544 U.S. 528, 531–532, 540, 545, 125 S.Ct. 2074, 161 L.Ed.2d 876. The *Agins* test had been current in Ohio. Cf. *Haisley v. Mercer Cty. Bd. of Zoning Appeals,* 3d Dist. No. 10–07–05, 2007-Ohio-6021, 2007 WL 3342768, at ¶ 12. "Under the test articulated in *Agins,* a party could establish a zoning related takings claim on one of two grounds: (1) the zoning provision did not substantially advance a legitimate municipal health, safety or welfare interest, or (2) the zoning restriction deprived an owner of all economically viable use of the property." Id. The *Agins* test was utilized by the trial court in analyzing the takings issues in this case.

{¶ 92} In *Lingle,* the United States Supreme Court determined that the "substantially advances" portion of the *Agins* test was inappropriate for takings jurisprudence, being an inquiry into due process. Cf. *Lingle,* 544 U.S. at 540–542, 125 S.Ct. 2074, 161 L.Ed.2d 876. Currently, therefore, courts must identify the nature of the alleged taking, in order to apply the correct test. Courts should look to *Loretto v. Teleprompter Manhattan CATV Corp.* (1982), 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868, when a permanent physical invasion of property by the government occurs. Cf. *Lingle* at 538–539, 125 S.Ct. 2074, 161 L.Ed.2d 876. *Lucas v. South Carolina Coastal Council* (1992), 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798, provides guidance when a government regulation allegedly deprives a property owner of all economically viable use of his or her property. Cf. *Lingle* at 538–539, 125 S.Ct. 2074, 161 L.Ed.2d 876. Finally, *Penn Cent. Transp. Co. v. New York City* (1978), 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631, applies in cases such as the instant case, where a government regulation allegedly affects property without emptying it of all value. Cf. *Lingle* at 538–539, 125 S.Ct. 2074, 161 L.Ed.2d 876.

{¶ 93} Regarding *Penn Cent.,* the *Lingle* court stated as follows:

{¶ 94} "The Court in *Penn Central* acknowledged that it had hitherto been 'unable to develop any "set formula" ' for evaluating regulatory takings claims, but identified 'several factors that have particular significance.' Id., 43 [438] U.S., at 124 [, 57 L.Ed.2d 63198 S.Ct. 2646], * * *. Primary among those factors are 'the economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations.' Ibid. In addition, the 'character of the governmental action'—for instance whether it amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good'—may be relevant in discerning whether a taking has occurred. Ibid." *Lingle,* 544 U.S. at 538–539, 125 S.Ct. 2074, 161 L.Ed.2d 876.

{¶ 95} Application of the *Penn Cent.* factors to this case shows that the Fosters have not suffered any taking. They have not suffered any economic impact due to Ordinance 2000–26, since they may continue to park their recreational vehicle on the concrete pad in front of their house, due to the permanent injunction granted by the trial court. The character of the governmental intrusion indicates that no taking has occurred. The city has not invaded their property; the ordinance is merely designed to adjust the burdens of economic life by requiring owners of certain vehicles to park them in certain places on their properties.

{¶ 96} These issues are without merit, as is the eighth assignment of error.

{¶ 97} We gratefully acknowledge the painstaking and thoughtful judgment entry of the trial court, which has been a lantern lighting our way through the labyrinth of this dispute.

{¶ 98} The judgment of the Lake County Court of Common Pleas is affirmed.

{¶ 99} It is the further order of this court that appellants are assessed costs taxed herein. The court finds that there were reasonable grounds for this appeal.

Judgment affirmed.

GRENDELL, J., concurs in judgment only.

RICE, P.J., dissents.

CYNTHIA WESTCOTT RICE, P.J., dissenting.

{¶ 100} Although the Fosters assert a myriad of different arguments in support of their appeal, I believe that the issues surrounding their second and third assignments of error are dispositive of the instant matter. In their second and third assignments of error, the Fosters claim, inter alia, that the trial court erred by failing to follow the law of the case established by this court's 1999 holding in *Donsante v. Wickliffe* (Oct. 29, 1999), 11th Dist. Nos. 98–L–046 and 98–L–047, 1999 WL 1074115. Appellant's argument presupposes that our holding in *Donsante*, a case in which appellants appealed the trial court's validation of former Ordinance No. 1996–2, controls the validity of Ordinance No. 2000–26. This assumption exhibits various flaws.

{¶ 101} First, *Donsante*, an appeal taken from a final judgment in trial court case No. 94 CV 000103, declared Ordinance No. 1996–2 invalid due to certain fatal procedural flaws that compromised its enactment. Following this decision, the city appealed to the Supreme Court of Ohio in *Donsante v. Wickliffe* (2000), 88 Ohio St.3d 1412, 723 N.E.2d 118; however, the Supreme Court dismissed the matter for a lack of jurisdiction. This operated as a final adjudication on the

merits. See, e.g., *Dobbins v. Ohio Bur. of Motor Vehicles* (1996), 75 Ohio St.3d 533, 664 N.E.2d 908. As there was nothing remaining to be litigated regarding Ordinance 1996–2, that case was over and final upon the Supreme Court's dismissal.

{¶ 102} "The law of the case is a longstanding doctrine in Ohio jurisprudence. '[T]he doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" *Hopkins v. Dyer*, 104 Ohio St.3d 461, 463, 820 N.E.2d 329, 2004-Ohio-6769, quoting *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 462 N.E.2d 410. Thus, the law-of-the-case doctrine requires an inferior court to follow a superior court's ruling on an issue already decided by the appellate court in the context of that case.

{¶ 103} The case brought under the Fosters' so-called third supplemental complaint, while sharing the same trial court number, was separate and distinct from the matters resolved in *Donsante*. The matter in controversy resolved by *Donsante* was the validity of former Ordinance 1996–2. Once the Supreme Court dismissed the city's appeal of this court's holding in *Donsante*, that case was over and final. Thus, I agree with the majority that the law-of-the-case doctrine would have no application to this matter.

{¶ 104} However, the foregoing analysis anticipates a more significant problem than a misunderstanding of the application of the law-of-the-case doctrine. Upon the Supreme Court's dismissal of the city's appeal, Case No. 94 CV 000103 was both procedurally and substantively closed. The Fosters' "third supplemental complaint" was filed to address a newly enacted ordinance and therefore alleged a new case in controversy. Because Case No. 94 CV 000103 was over upon the Supreme Court's dismissal of the city's appeal, the trial court had no jurisdiction to entertain the Fosters' "third supplemental complaint." To invoke the trial court's jurisdiction to litigate the issues in the "third supplemental complaint," the Fosters were required to commence a new action in accordance with Civ.R. 3(A). Absent the filing of a new action, the trial court lacked subject-matter jurisdiction to act on the issues animating the Fosters' "third supplemental complaint" and any subsequent motions.

{¶ 105} Although the majority acknowledges that "the matter should have been filed as a new case," it nevertheless concludes that the lower court "certainly has subject-matter jurisdiction of the issues involved." This holding is internally inconsistent. The majority's holding that the matter should have been filed as a new case means that the trial court did not have jurisdiction to entertain the "third supplemental complaint." I fail to see how the lower court could retain subject-matter jurisdiction over a case that has been unconditionally and finally adjudicated on the merits. Once the Supreme Court dismissed the city's appeal

in *Donsante,* case No. 94 CV 000103 was over and the trial court lost all jurisdiction over that case. That is, once case No. 94 CV 000103 was adjudicated with finality, neither the Fosters nor the trial court possessed the power to resurrect it to litigate additional matters.

{¶ 106} Regardless of procedural deficiencies, the issue of subject-matter jurisdiction cannot be waived. *H.R. Options, Inc. v. Zaino,* 100 Ohio St.3d 373, 374, 2004-Ohio-1, 800 N.E.2d 740; see also *Mid–States Terminal, Inc. v. Lucas Cty. Bd. of Revision,* 76 Ohio St.3d 79, 82, 666 N.E.2d 1077. Where, as here, the parties fail to raise a jurisdictional issue on appeal, an appellate court must raise it sua sponte. *Davison v. Rini* (1996), 115 Ohio App.3d 688, 692, 686 N.E.2d 278, citing *Whitaker–Merrell v. Geupel Co.* (1972), 29 Ohio St.2d 184, 186, 58 O.O.2d 399, 280 N.E.2d 922. Because this case was commenced under a defunct case number, I would hold that the trial court lacked jurisdiction to rule on any issues pertaining to Ordinance 2000–26. This matter should be reversed and remanded with specific instructions to the trial court to vacate its March 13, 2006 judgment entry for lack of subject-matter jurisdiction.

{¶ 107} I accordingly dissent.